1
2
3
4
5
6
7
8                    **UNITED STATES DISTRICT COURT**

9                    **EASTERN DISTRICT OF CALIFORNIA**

10

11  JULIAN III FLORES and              ) Case No.: 1:17-cv-00427  JLT
    ALEJANDRA FLORES ,                 )
12                                     ) PRETRIAL ORDER
                  Plaintiffs,          )
13                                     ) Deadlines:
         v.                            )   Motions in Limine Filing:  7/8/2019
14                                     )   Oppositions to Motions in Limine:  7/15/2019
    FCA US LLC,                        )   Hearing on Motions in Limine:
15                                     )     8/1/2019 at 10:30 a.m
                  Defendant.           )   Trial Submissions: 8/9/2019
16                                     )
                                       ) Jury trial:  8/12/2019 at 8:30 a.m., 3-4 days
17  _____)

18        Julian III Flores and Alejandra Flores purchased a 2012 Dodge Ram 1500 in September 2011,

19  which they assert had serious defects and nonconformities to warranty.  Plaintiffs contend FCA UC

20  LLC manufactured the vehicle and is liable for violations of the Song-Beverly Consumer Warranty Act

21  and fraudulent inducement under California law.

22  **A.      JURISDICTION/ VENUE**

23        This Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332.  In addition,

24  the events that gave rise to this action occurred in Elk Grove, California.  Accordingly, the parties

25  agree venue is proper in the United States District Court for the Eastern District of California.  *See* 28

26  U.S.C. § 1391.

27  **B.      JURY TRIAL**

28        Plaintiffs timely demanded a jury trial in this matter.

                                        1

**C. UNDISPUTED FACTS**

1. FCA US LLC is a manufacturer of Dodge vehicles, including the 2012 Dodge Ram 1500.

2. Plaintiffs purchased a new 2012 Dodge Ram 1500 (the "Dodge Ram" or the "subject vehicle") on September 4, 2011, from Lampe Chrysler Dodge Jeep Ram ("Lampe CDJR").

3. The subject vehicle was covered by express written warranties issued by FCA US LLC, including the "Basic Limited Warranty" and the "Powertrain Limited Warranty."

4. The "Basic Limited Warranty" covered all components of the subject vehicle against defects in materials or workmanship for a period of three years or 36,000 miles, whichever came first, calculated from the date of delivery of the subject vehicle to Plaintiffs.

5. The "Powertrain Limited Warranty" covered specified engine, transmission, and drivetrain components of the subject vehicle for a period of five years or 100,000 miles, whichever came first, calculated from the date of delivery of the subject vehicle to Plaintiffs.

6. Plaintiffs timely submitted a request for exclusion from the proposed settlement of a class action lawsuit, *Velasco, et al. v. Chrysler Group, LLC*, No. 2:23-cv-08080.

7. Lampe CJDR is Defendant's authorized repair facility.

**D. DISPUTED FACTS**

1. Whether the subject vehicle's problems, or any of them, that were presented to Lampe Chrysler for diagnosis and repair are "nonconformities" (e.g., did they substantially impair the vehicle's use, value or safety).

2. Whether FCA US LLC or its authorized repair facilities were given a "reasonable number of opportunities" to repair the subject vehicle to match its express warranty(ies).

3. Whether FCA US LLC or its authorized repair facility(ies) failed to repair the subject vehicle to match the express warranty after a reasonable number of opportunities.

4. Whether, if FCA US failed to repair the subject vehicle after a reasonable number of opportunities, FCA US LLC failed to promptly replace or repurchase the subject vehicle.

5. Whether Plaintiff placed FCA US LLC on notice of a potential claim for the repurchase or replacement of the subject vehicle.

6. Whether any failure to repurchase or replace the subject vehicle was willful.

7.     Whether FCA US LLC maintains an informal dispute resolution program meeting the requirements for a "qualified alternative dispute resolution program" including:

(1) Whether the program complies with the minimum requirements of the Federal Trade Commission for informal dispute settlement procedures as set forth in Part 703 of Title 16 of the Code of Federal Regulations, as those regulations read on January 1, 1987.

(2) Whether the program takes into account, in rendering decisions, all legal and equitable factors, including, but not limited to, the written warranty, the rights and remedies conferred in regulations of the Federal Trade Commission contained in Part 703 of Title 16 of the Code of Federal Regulations as those regulations read on January 1, 1987, Division 2 (commencing with Section 2101) of the Commercial Code, this chapter, and any other equitable considerations appropriate in the circumstances.

(3) Whether the program maintains certification by the Department of Consumer Affairs pursuant to Chapter 9 (commencing with Section 472) of Division 1 of the Business and Professions Code.

8.     Whether the Ram was sold with a defective Totally Integrated Power Module 7.

9.     Whether FCA US LLC was aware that the TIPM-7 in Plaintiffs' subject vehicle was defective before the sale of the vehicle.

10.     Whether National Highway Traffic Safety Administration ("NHTSA") investigations and recalls, FCA US LLC's Technical Service Bulletins ("TSBs"), and/or FCA US LLC's voluntary recall notices demonstrate that FCA US LLC had superior and exclusive knowledge of the defects in the TIPM-7 found in the subject vehicle.

11.     Whether pre-release testing performed on vehicles equipped with the TIPM 7, demonstrate FCA US LLC's longstanding knowledge of TIPM-7 defects.

12.     Whether FCA US LLC disclosed information concerning TIPM-7 defects to Plaintiffs before [they] purchased the subject vehicle.

13.     Whether FCA US LLC instructed its authorized repair facilities to disclose the TIPM defect to consumers or to Plaintiffs.

14.     Whether Plaintiffs did not know of the TIPM defects when they purchased the subject

vehicle or brought it to authorized repair facilities for diagnosis or repair.

15. Whether Plaintiffs reasonably relied on FCA US LLC's representations or omissions about defects in vehicles with the TIPM 7, like the subject vehicle.

16. Whether FCA US LLC concealed from Plaintiffs a known defect or defects related to the TIPM-7.

17. Whether Plaintiffs incurred any harm or damages as a result of any alleged concealment of defects related to the TIPM-7.

18. Plaintiff's total damages, which may include:

(1) The "total amount paid and payable" for the subject vehicle;

(2) The extent and value of any mileage offset applicable to a restitution remedy under the Song-Beverly Act, calculated as follows: "The amount directly attributable to use by the buyer shall be determined by multiplying the actual price of the new motor vehicle paid or payable by the buyer, including any charges for transportation and manufacturer-installed options, by a fraction having as its denominator 120,000 and having as its numerator the number of miles traveled by the new motor vehicle prior to the time the buyer first delivered the vehicle to the manufacturer or distributor, or its authorized service and repair facility for correction of the problem that gave rise to the nonconformity."

(3) The total amount of incidental damages suffered by Plaintiffs, including "expenses reasonably incurred in inspection, receipt, transportation and care and custody of goods" as defined in Commercial Code section 2715.

(4) The total amount of consequential damages suffered by Plaintiffs, "including, but not limited to, reasonable repair, towing, and rental car costs actually incurred" (Civil Code § 1793.2(d)(2)(A)) and "any loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know and which could not reasonably be prevented by cover or otherwise; and [i]njury to person or property proximately resulting from any breach of warranty" (Comm. Code § 2715(2)).

19. Whether concealment of TIPM 7 defects was a substantial factor in causing Plaintiffs' harm.

20.     FCA US LLC's net worth, under California precedent for calculation of punitive damages.

21.     Plaintiffs' total damages. Plaintiffs attached their calculation of damages pursuant to the Song-Beverly Consumer Warranty Act to the Pretrial Statement as Exhibit 2. Defendant disagrees with Plaintiffs' calculation of the mileage offset and asserts the incidental and consequential damages have not been documented.

**E.     DISPUTED LEGAL ISSUES**

None.

**F.     DISPUTED EVIDENTIARY ISSUES**

Both parties intend to file motions in limine regarding the evidence to be used at trial. **Counsel SHALL conduct a meaningful meet-and-confer process to limit the motions to only those that are necessary to file**.

**Plaintiff:**

1.     Plaintiffs reserve any objections to the content of any demonstrative exhibits, including any intended PowerPoints or slideshows to be used by Defendant during opening or closing presentations.

2.     Plaintiffs object to the introduction of any documentary evidence concerning any dispute resolution program allegedly maintained by FCA US LLC, on the grounds that no such evidence was produced by FCA US LLC in discovery. Plaintiffs will object to any such evidence at the time of trial, should FCA US LLC seek to introduce the same.

3.     Plaintiffs object to the introduction of any documentary evidence purporting to show that the Dodge Ram's problems are the result of misuse, with the exception of Lampe Chrysler repair records produced by FCA US LLC in discovery or produced by Plaintiffs in discovery. Plaintiffs are unaware of any other documentary records of the condition of the Dodge Ram at the times it was presented for diagnosis and repair and will object to any such evidence at the time of trial, should FCA US LLC seek to introduce the same.

4.     Plaintiffs will object to any testimony purporting to interpret the scope or applicability of warranty coverage, which is an inadmissible legal opinion. Plaintiffs will file a motion in limine on

this subject if Defendant does not stipulate.

5.      Plaintiffs will object to testimony, evidence or argument which Defendant may raise in an effort to seek a charge-off or reduction in damages for funds received when Plaintiffs traded the vehicle in. Such reductions are not supported by the Song-Beverly Act which is a protective statute intending to take away the benefit to the manufacturer for the sale of a non-conforming product. Plaintiffs will file a motion in limine on this subject if Defendant does not stipulate.

6.      Plaintiffs will object to introduction of any evidence not produced in discovery. Plaintiffs will file a motion in limine on this subject if Defendant does not stipulate.

7.      Plaintiffs will object to any testimony by Defendant's trial witness that is not based on personal knowledge. Plaintiffs will file a motion in limine on this subject if Defendant does not stipulate.

8.      Plaintiffs will object to introduction of any evidence, testimony, or argument referring to attorney fees. Plaintiffs will file a motion in limine on this subject if Defendant does not stipulate.

9.      Plaintiffs will seek to introduce evidence, testimony, and argument concerning TSBs and recalls issued by FCA US LLC concerning problems with Plaintiffs' Dodge Ram, including those that may not have been performed to the Dodge Ram. Plaintiffs will file a motion in limine on this subject

10.     Plaintiffs will object to introduction of any evidence, testimony, or argument referring to settlement negotiations, including pre and post-litigation settlement offers. Plaintiffs will file a motion in limine on this subject if Defendant does not stipulate.

11.     Plaintiffs will object to any evidence, testimony, or argument asserting that specific components or specific complaints must each experience an unreasonable number of repair attempts to qualify for relief under the Song-Beverly Act. Plaintiffs will file a motion in limine on this subject if Defendant does not stipulate.

12.     Plaintiffs will object to introduction of any evidence, testimony, or argument referring to attorney advertising. Plaintiffs will file a motion in limine on this subject if Defendant does not stipulate.

13.     Plaintiffs will object to introduction of any evidence, testimony, or argument referring

to the Dodge Ram's mileage at the time of trial. Plaintiffs will file a motion in limine on this subject if Defendant does not stipulate.

14. Plaintiffs contend that at least some of Defendant's Exhibits are inadmissible pursuant to Fed.R.Evid 801, et. seq., and Fed.R.Civ.P. 26(a)(1)(A)(ii). These documents were not identified or produced by Defendant in discovery, and Defendant has not identified any witness authorized to authenticate or testify about these documents.

15. Plaintiffs included Defendant's corporate representative who attended this trial as a potential witness. Plaintiffs will oppose any motion made by Defendant to prevent the corporate representative from being called as a witness.

**Defendant**

1. Plaintiffs have listed "whether FCA US has an informal dispute resolution program" as a disputed issue. The question would be relevant only if Plaintiffs have pled entitlement to a civil penalty under California Civil Code Section 1794(e)(1). Plaintiffs' sole basis for a civil penalty in his Complaint is a "willful" violation of the Song-Beverly Act. The "willful" violation is set forth in California Civil Code Section 1794(c). As Plaintiffs did not plead a non-willful entitlement to a civil penalty, Defendant did not identify the State of California's certification of its third party informal dispute resolution program in its Rule 26 disclosure. Defendant would seek leave of Court to augment its disclosure to include the certification should Plaintiffs seek to amend their Complaint.

2. Plaintiffs have indicated they intend to call as a witness any individual that FCA US has attend the trial to sit at counsel table regardless of whether that individual has any knowledge concerning any facts of this case. FCA US objects to such a tactic. FCA US will file a motion in this regard.

3. Defendant contends that opinions by Plaintiffs' expert witness, Dr. Barbara Luna, concerning fraud are inadmissible. Defendant contends that Dr. Luna's opinions lack sufficient foundation and invade the purview of the jury. It is anticipated that Dr. Luna will testify live. The dispute concerning Dr. Luna's testimony concerning fraud may be addressed through a motion in limine.

4. Defendant contends that Exhibits 108 through 143, and 269 through 272, which are

identified as National Highway Transportation Safety Administration documents, under Fed.R.Evid 401-403 and Fed.R.Civ.P. 26(a)(1)(A)(ii) as they were not previously identified in discovery. The documents concern recalls that were not applicable to Plaintiffs' vehicle thus they not admissible as they are not relevant to this case. Introduction of the documents would be confusing and consume undue amounts of time. The dispute concerning these exhibits may be addressed through a motion in limine.

5.      Defendant contends that Exhibit 150, which is a Technical Service Bulletin for a vehicle that is not the same model or model year as Plaintiff's vehicle, is inadmissible pursuant to Fed.R.Evid 401-403 and Fed.R.Civ.P. 26(a)(1)(A)(ii) as it was not previously identified in discovery and are irrelevant. The dispute concerning this exhibit may be addressed through a motion in limine.

6.      Defendant contends that Exhibits 144-149, 153, 169-177, 179, 181, 183-191, 193-205, 208-213, 215-226, 228, 230-268 are inadmissible pursuant to Fed.R.Evid 401-403 and 602 and Fed.R.Civ.P. 26(a)(1)(A)(ii). None of Plaintiffs' proposed witnesses have personal knowledge of these documents, which consist of Defendant's internal documents on a variety of subjects. Plaintiffs conducted no discovery concerning the contents of these documents and any testimony regarding their meaning would be speculation. They were never identified in Plaintiffs' disclosure. The dispute concerning these exhibits may be addressed through a motion in limine. Defendant contends that Exhibits 178, 180, 182, 192, 206, 207, and 214 are inadmissible pursuant to Fed.R.Evid 401-403, 602 and 901 and Fed.R.Civ.P. 26(a)(1)(A)(ii). These documents consist of documents prepared by nonparties Continental, NEC/TOKIN and TYCO Electronics. Plaintiffs conducted no discovery concerning the documents and any testimony regarding their meaning would be speculation. They were never identified in Plaintiffs' disclosure. The dispute concerning these exhibits may be addressed through a motion in limine.

7.      Defendants contends that all exhibits that do not relate to warrantable repairs should be excluded and Defendant may file a Motion in Limine to address this issue.

**G.      SPECIAL FACTUAL INFORMATION**

None.

///

**H.   RELIEF SOUGHT**

Plaintiffs seek reimbursement for the cost of the vehicle, plus incidental and consequential damages as well as a civil penalty of up to two times actual damages for Defendant's alleged willful failure to comply with the Song-Beverly Act. Plaintiffs also seeks damages, including punitive damages, for Defendant's alleged fraudulent concealment of a known defect.

**I.   ABANDONED ISSUES**

Defendant withdraws the following Affirmative Defenses: First, Second, Third, Fourth, Fifth, Seventh, Eighth, Tenth, Twelfth, Thirteenth, Sixteenth, Seventeenth, Eighteenth, Nineteenth, and Twenty-Eighth.

**J.   WITNESSES**

1.    The following is a list of witnesses that the parties expect to call at trial, including rebuttal and impeachment witnesses.  NO WITNESS, OTHER THAN THOSE LISTED IN THIS SECTION, MAY BE CALLED AT TRIAL UNLESS THE PARTIES STIPULATE OR UPON A SHOWING THAT THIS ORDER SHOULD BE MODIFIED TO PREVENT "MANIFEST INJUSTICE."  Fed. R. Civ. P. 16(e); Local Rule 281(b)(10).

       a.    Julian III Flores

       b.    Alejandra Flores

       c.    Thomas Lepper, Plaintiffs' expert

       d.    Dr. Barbara Luna, Plaintiff's expert

       e.    Stan Gozzi, Defendant's automotive expert,

       f.    James Bielenda, Defendant's automotive engineer, Auburn Hills, Michigan

Plaintiffs also identified "FCA's Person Most Knowledgeable" and "Lampe Chrysler Dodge Jeep Ram's Person Most Qualified, Lampe CDJR, 3460 Naglee Road, Tracy, CA" as witnesses, and this is now the third time counsel has failed to identify the specific person at the relevant dealership by name.  (*See Durham v. FCA US LLC*, Case No. 2:17-cv-00596 JLT [Doc. 53 at 17]; *Celestine v. FCA US LLC*, Case No.: 2:17-cv-00597 JLT [Doc. 54 at 9]) Previously, the Court admonished the plaintiff's counsel that if he again failed to identify this witness by name, "the Court will strike the witness unless the person is identified by name or there is a showing that the plaintiff does not know

9

the person's name." *Celestine*, Doc. 54 at 9, n.1) Once again, Plaintiffs' counsel offered no explanation why this person's name was not included in the joint pretrial report. Doubling down, now plaintiff's counsel fails to identity who the "FCA's Person most Knowledgeable." Not only does this not comply with the Court's Local Rules, trial is not a deposition and, even if it were, plaintiff's counsel would have been obligated to identify the categories about which the witness would testify to allow FCA to determine who the proper witness would be. Accordingly, the Court accepts this as an admission that neither witness has any substantive information to add to the trial issues and neither will be permitted to testify at trial absent a showing of manifest injustice.

2. **The court does not allow undisclosed witnesses to be called for any purpose, including impeachment or rebuttal, unless they meet the following criteria**:

a. The party offering the witness demonstrates that the witness will rebut evidence that could not be reasonably anticipated at the pretrial conference, or

b. The witness was discovered after the pretrial conference and the proffering party makes the showing required in paragraph 3, below.

3. Upon the post pretrial discovery of any witness a party wishes to present at trial, the party shall promptly inform the court and opposing parties of the existence of the unlisted witness, so the court may consider whether the witness will be permitted to testify at trial. The witness will not be permitted unless:

a. The witness could not reasonably have been discovered prior to the discovery cutoff;

b. The court and opposing parties were promptly notified upon discovery of the witness;

c. If time permitted, the party proffered the witness for deposition; and

d. If time did not permit, a reasonable summary of the witness's testimony was provided to opposing parties.

**K. EXHIBITS, SCHEDULES AND SUMMARIES**

The following is a list of documents or other exhibits that the parties identified in their joint pretrial statement. **They SHALL review every exhibit listed to determine those exhibit that will not**

10

**be offered at trial and limit this list only to those they expect to offer at trial.**[1]

NO EXHIBIT, OTHER THAN THOSE LISTED IN THIS SECTION, MAY BE ADMITTED UNLESS THE PARTIES STIPULATE OR UPON A SHOWING THAT THIS ORDER SHOULD BE MODIFIED TO PREVENT "MANIFEST INJUSTICE." Fed. R. Civ. P. 16(e); Local Rule 281(b)(11).

1. **For the parties to use an undisclosed exhibit for any purpose, they must meet the following criteria**:

    a.   The party proffering the exhibit demonstrates that the exhibit is to rebut evidence that could not have been reasonably anticipated, or

    b.   The exhibit was discovered after the issuance of this order and the proffering party makes the showing required in paragraph 2, below.

2. Upon the discovery of an exhibit after the discovery cutoff, the party shall promptly inform the court and opposing parties of the existence of the exhibit, so that the court may consider the admissibility at trial. The exhibit will not be received unless the proffering party demonstrates:

    a.   The exhibit could not reasonably have been discovered earlier;

    b.   The court and the opposing parties were promptly informed of its existence; and

    c.   The proffering party forwarded a copy of the exhibit (if physically possible) to the opposing party. If the exhibit may not be copied, the proffering party must show that it has made the exhibit reasonably available for inspection by the opposing parties.

**Joint Exhibits**

The parties have identified the following exhibits to which there are no objections, and which may be introduced by Plaintiffs or Defendant:

1. Retail Installment Sale Contract, dated September 4, 2011

2. 2012 Ram 1500 Warranty Information Booklet

3. Vehicle Information Detail Report

4. Warranty Claim Records

---

[1] This should have been done *before* filing the joint pretrial conference so that the joint pretrial report accurately reflects those exhibits the parties expect to offer. The Court notes that counsel seem to have failed to provide a joint pretrial report that is specific to this case and is boilerplate from other similar cases. This is insufficient and fails to comply with Local Rule 281 and the order of the Court (Doc. 10 at 5-6)

5.         Warranty Claim Summary Report

6.         STAR CASE S1308000399

7.         Customer Assistance Inquiry Records

8.         Repair Order No. 174984, dated October 10, 2011

9.         Repair Order No. 177419, dated December 15, 2011

10.       Repair Order No. 181151, dated March 22, 2012

11.       Repair Order No. 181326, dated March 27, 2012

12.       Repair Order No. 188005, dated August 30, 2012

13.       Repair Order No. 191577, dated November 19, 2012

14.       Repair Order No. 195135, dated February 12, 2013

15.       Repair Order No. 203887, dated August 12, 2013

16.       Repair Order No. 218098, dated June 3, 2014

17.       Repair Order No. 222909, dated August 29, 2014

18.       Repair Order No. 228937, dated December 23, 2014

19.       Repair Order No. 231105, dated February 6, 2015

20.       Repair Order No. 6008229, dated November 20, 2015

21.       Repair Order No. 6009178, dated December 8, 2015

22.       Repair Order No. 6024087, dated August 16, 2016

23.       Repair Order No. 6024248, dated August 18, 2016

24.       Insurance Payment History

25.       Payment History

26.       Recall Index

27.       TSB Index

**Plaintiffs' Exhibits**

100.      *Velasco, et al. v. Chrysler Group LLC, Inc.*, No. 2:13- cv-08080 Final Order and Judgment

101.      Plaintiffs' Request for Exclusion from *Velasco, et al. v. Chrysler Group LLC, Inc.*, No. 2:13- cv-08080

| | | |
|---|---|---|
| 102. | Recall R09 Owner Notification Letter (Plaintiffs' Copy) |
| 103. | Recall R09 Dealer Service Instructions |
| 104. | FCA Dealer Policy Manual |
| 105. | Recall P60 Dealer Service Instructions |
| 106. | Recall P60 Sample Owner Notification Letter |
| 107. | Blank |
| 108. | NHTSA Recall 05V-461 – Defect and Noncompliance Notice dated 10/04/2005 |
| 109. | NHTSA Recall 05V-461 – Recall Acknowledgment |
| 110. | NHTSA Recall 05V-461 – Information Required by Defects Report Regulation dated 11/03/2005 |
| 111. | NHTSA Recall 05V-461 – Remedy Instructions and TSB dated November 2005 |
| 112. | NHTSA Recall 05V-461 – Owner Notification Letter |
| 113. | NHTSA Recall 05V-461 – Recall Quarterly Report dated 12/31/2005 |
| 114. | NHTSA Investigation PE07- 027 ODI Resume dated 5/29/2007 |
| 115. | NHTSA Recall 07V-291 – Defect Notice dated 7/03/2007 |
| 116. | NHTSA Recall 07V-291 – Recall Acknowledgment dated 7/09/2007 |
| 117. | NHTSA Recall 07V-291 – Remedy Instructions and TSB dated July 2007 |
| 118. | NHTSA Recall 07V-291 – Owner Notification Letter |
| 119. | NHTSA Recall 07V-291 – Recall Quarterly Report dated 9/30/2007 |
| 120. | Emissions Recall 2007-15-E (G23) dated 2007 |
| 121. | Technical Service Bulletin 08-018-08 dated May 2008 |
| 122. | NHTSA Recall 09V-438 – Defect Notice dated 11/03/2009 |
| 123. | NHTSA Recall 09V-438 – Recall Acknowledgment dated 11/09/2009 |
| 124. | NHTSA Recall 09V-438 – Owner Notification Letter |
| 125. | Technical Service Bulletin 08-053-11 dated August 2011 |
| 126. | NHTSA Recall 13V-282 Defect Notice dated 7/02/2013 |
| 127. | NHTSA Recall 13V-282 – Owner Notification Letter |
| 128. | NHTSA Recall 13V-282 – Recall Acknowledgment dated 7/5/2013 |

13

129. NHTSA Recall 13V-282 – Remedy Instructions and TSB dated 11/2013

130. NHTSA Recall 13V-282 – Information Required by Defects Report Regulation dated 1/31/2014

131. Center for Auto Safety Defect Petition to NHTSA dated 8/21/2014

132. NHTSA Recall 14V-530 – Defect Notice (Part 573) dated 9/03/2014

133. NHTSA Recall 14V-530 – Manufacturers Notices dated 9/4/2014

134. NHTSA Recall 14V-530 – Recall Acknowledgment dated 9/19/2014

135. NHTSA Recall 14V-530 – Memo and Email dated 10/24/2014

136. NHTSA Recall 14V-530 – Interim Owner Notification Letter (Part 577) Communication Cover Letter dated 11/11/2014

137. NHTSA Recall 14V-530 – Interim Owner Notification Letter (Part 577) dated 11/11/2014

138. NHTSA Recall 14V-530 – Issued Owner Notification Letter (Part 577)

139. NHTSA Recall 14V-530 – Info Required by Defects Report Regulation dated 1/06/2015

140. NHTSA Recall 14V-530 – Recall Quarterly Report dated 1/08/2015

141. Center for Auto Safety Supplement dated 9/8/2014

142. NHTSA Denial of Petition for a Defect Investigation dated 7/24/2015

143. Safety Recall P54/NHTSA 14V- 530 Fuel Pump Relay

144. Email from David Baker dated 6/17/2014 regarding TIPM Returns from Safety Office Weekly Meeting Agenda – Aug 10 (CGLLC060961-69)

145. Email from Robert Samko Jr. dated 4/1/2014 regarding fuel pump status update for tomorrow morning (CGLLC060986-87)

146. Email from Hassan Malik dated 4/24/2014 regarding DOE-Fuel Pump Relay Testing Kick Off at CTC (CGLLC061013-19)

147. Powerpoint presentation titled "Relay Testing" (CGLLC061099-1101)

148. Email from Patrick Dean dated 11/29/2010 regarding Issues with TIPM software (CGLLC061129-32)

149. Corrective Action Process Issue #271414 dated 04/27/09 (CGLLC086937)

150. TSB 08-024-11 Rev. A

151. Plaintiff Safety Recall R09 / NHTSA 15V-115 Fuel Pump Relay

152. Blank

153. FCA Policies

154-168. Blank

169. "Low Current Switch Best Practices and Lessons Learned" dated 06/05/09 Document Number SD-11814 (Bates CGLL079151-54)

170. Duplicate of Exhibit 144

171. Email from Seakleang Chheu dated 9/17/10 regarding 2011 RT Release – TIPM7C for S2B Build (CGLLC068415-17)

172. Email from Seakleang Chheu dated 10/04/10 regarding 2011 MY TIPM7C & &Ci (CGLLC060882-84)

173. Email from Seakleang Chheu dated 10/21/10 regarding T1018- M10-00 (CGLLC063713)

174. Email from Seakleang Chheu dated 10/25/10 regarding Turn Lamp Diagnostics for 2011MY RT (CGLLC073514-16)

175. Email from Seakleang Chheu dated 10/28/10 regarding 2010MY TIPM7C – VTA Test Software on 2010 RT Vehicle in BC, Canada (CGLLC070637-39)

176. Email from Saji John dated 12/02/10 regarding TIPM from vin AT214727 (CGLLC061824-26)

177. Email from Patrick Dean dated 11/29/10 regarding Issues with TIPM software (70th Anniversary Jeep) (CGLLC061129-32)

178. Continental Automotive Systems Software Release Notes Project: TIPM MY12 (CGLLC060855-70)

179. Email from Robert Strother dated 8/08/11 regarding Radio signal strength logs (CGLLC061427-39)

180. Continental Totally Integrated Power Management Module (TIPM7) Engineering

Test Plan for Silicon contamination on NEC Relay (CGLLC077140-47)

181.    2013MY 3MIS Ordinary Quality May Built Vehicles Electrical/Electronics & Uconnect (CGLLC079465-83)

182.    Continental: TIPM7 Risk Assessment (CGLLC077148-50)

183.    Email from Carlos Munoz-Valadez dated 8/21/13 regarding TIPM7 WD/WK Replacements for Fuel Pump Relay Issue (CGLLC077740-41)

184.    Email from Satnam Bansal dated 9/05/13 regarding TIPM7 WD/WK Replacements for Fuel Pump Relay Issue (CGLLC077137-38)

185.    Email from Robert Samko Jr. dated 10/03/13 regarding WK'11 – TIPM no start (CGLLC084404-07)

186.    Email from Greg Niemiec dated 9/27/13 regarding TIPM p/n RL692316AI (CGLLC078442-44)

187.    DealerConnect Part Inquiry for RL692316AI (CGLLC078446)

188.    Omitted

189.    Email from Greg Niemiec dated 9/27/13 regarding TIPM p/n RL692316AI (CGLLC078458-60)

190.    Email from Jeff Fenoseff dated 10/01/13 regarding Potential New Investigation: 2011- 2013 WK/WD TIPM (CGLLC079333)

191.    Email from Lisa Sacino dated 10/03/13 regarding Review MY 11-13 WK TIPM Proposed Repair Procedure (CGLLC084222-24)

192.    Continental MY 2011 TIPM7 36 Months in Service dated 10/04/13 (CGLLC07610-14)

193.    Email from Greg Niemiec dated 10/08/13 regarding Meeting minutes from TIPM7 Fuel Pump discussion (CGLLC076468-70)

194.    Email from Jennifer Moore dated 10/16/13 regarding Meeting minutes from TIPM7 Fuel Pump discussion (CGLLC076932-35)

195.    Email from Mark Cornell dated 10/11/13 regarding Notes from Mopar VOR TIPM7 Meeting (CGLLC076489-90)

196. Email from David Bustamante dated 10/16/13 regarding TIPM-Service Part Shortage (CGLLC084641)

197. Email from Saji John dated 10/18/13 regarding TIPM7 Fuel Pump assembly plant process (CGLLC077732-33)

198. Email from Greg Niemiec dated 10/24/13 regarding 11 WK TIPM – Fuel Pump Relay Bypass Validation (CGLLC078543-44)

199. Email from Greg Niemiec dated 10/25/13 regarding Emerging Issue TIPM replacements for 11-13 WK's 04692316AJ (CGLLC078582-84)

200. Email from Robert Samko Jr. dated 10/28/13 regarding TIPM fuel pump sales code analysis (CGLLC079163-64)

201. Email from Dinh Tran dated 10/28/13 regarding Scope plots taken from WK/RT at Troy (CGLLC084235-36)

202. Email from Jennifer Kozik dated 10/30/13 regarding MY11 WK/WD TIPM – On Hold (CGLLC079035-36)

203. Email from Jennifer Moore dated 11/08/13 regarding Status TIPM I-Sheet and kits (CGLLC07658-62)

204. Email from Greg Niemiec dated 10/31/13 regarding TIPM Update Intermittent Crank No Start (CGLLC078489-90)

205. Chrysler I-Sheet for Wiring Swap (CN# 30118-V02-AA) (CGLLC079663-64)

206. Continental Analysis Report #0080813 dated 11/09/13 (CGLLC078953-77)

207. Continental Analysis Report #0080813 dated 11/09/13 (CGLLC078013-49)

208. Email from Satnam Bansal dated 11/11/13 regarding NHTSA Vehicle Owner Questionnaire (CGLLC084230-31)

209. Email from Mark Cornell dated 11/13/13 regarding WK Fuel pump relay report (CGLLC078068-69)

210. Email from Tim Corsich dated 11/20/13 regarding Platform variation (CGLLC078684-87)

211. Email from Robert Samko Jr. dated 11/20/13 regarding Management awareness

17

(CGLLC079442-52)

212.    Chrysler Fuel Pump Relay – Root Cause Update Powerpoint dated 11/22/13 (CGLLC077905-12)

213.    2011 WK QNA Summary for TIPM Fuel Pump Relay (CGLLC076955-60)

214.    NEC/TOKIN Analysis Result of Returned Module for Continental (Interim 2nd) dated 11/29/13 (CGLLC077760-84)

215.    Totally Integrated Power Module Investigation (TIPM7) Powerpoint dated 12/13/13

216.    Email from Jeff Fenoseff dated 12/13/13 regarding Request: TIPM Usage / Read Across (CGLLC078978-80)

217.    Email from Carlos Munoz-Valadez dated 1/14/14 regarding Fuel Pump TIPM7 – Snubber and External relay testing (CGLLC077916-18)

218.    Email from Jennifer Moore dated 1/21/14 regarding TIPM7 service component ISheet (CGLLC078680-81)

219.    Email from Satnam Bansal dated 1/29/14 regarding WK/WD TIPM Temperature Classification (PF- 11284) Totally Integrated Power Management (TIPM) Module Performance Standard (CGLLC084521-22)

220.    Email from Timothy Kraft dated 1/31/14 regarding 11/12 WK Fog Light Malfunction (CGLLC078356-57)

221.    Email from Mark Cornell dated 2/19/14 regarding WD/WK Relay Discussion (CGLLC077037-40)

222.    Email from Satnam Bansal dated 2/26/14 regarding TIPM7 – Fuel Pump Relay Workshop (CGLLC077064-68)

223.    Email from Carlos Munoz-Valadez dated 3/31/14 regarding TIPM – Fuel Relay (CGLLC061110-13)

224.    Email from Robert Schropshire, Jr. dated 4/15/14 regarding 20 ms glitch on PCM fuel pump relay Ctrl (CGLLC060916-22)

225.    Email from Simon Kissonergis dated 5/13/14 regarding TIPM (CGLLC084561)

226.    Email from Dennis Gauthier dated 5/20/14 regarding 2011 DS Truck Florida

Evaluations (CGLLC076577-78)

227.    Email from Jennifer Moore dated 6/10/14 regarding Continental TIPM/CBC Status (CGLLC084545)

228.    TIPM7 Fuel Pump Relay Executive Review Powerpoint dated 8/25/14 (CGLLC086853-61)

229.    Tyco Electronics Application Note – Relay Contact Life (CGLLC076730-32)

230.    Corrective Action Process Issue #208186 dated 01/04/06 (CGLLC087011-17)

231.    Corrective Action Process Issue #210412 dated 01/19/06 (CGLLC087018-26)

232.    Corrective Action Process Issue #212625 dated 01/31/06 (CGLLC087240-48)

233.    Corrective Action Process Issue #218382 dated 04/21/2006 (CGLLC087027-33)

234.    Corrective Action Process Issue #226741 dated 02/21/07 (CGLLC087072-79)

235.    Corrective Action Process Issue #239773 dated 05/15/07 (CGLLC087096-101)

236.    Corrective Action Process Issue #246185 dated 08/15/07 (CGLLC086880-87)

237.    Corrective Action Process Issue #246472 dated 08/20/07 (CGLLC086888-94)

238.    Corrective Action Process Issue #244159 dated 02/27/08 (CGLLC087102-110)

239.    Corrective Action Process Issue #248304 dated 09/27/07 (CGLLC086895-901)

240.    Corrective Action Process Issue #258126 dated 06/11/08 (CGLLC087385-92)

241.    Corrective Action Process Issue #261428 dated 08/28/08 (CGLLC086902-08)

242.    Corrective Action Process Issue #263440 dated 10/08/08 (CGLLC086909-15)

243.    Corrective Action Process Issue #264520 dated 11/03/08 (CGLLC086924-29)

244.    Corrective Action Process Issue #267716 dated 02/02/09 (CGLLC087148-54)

245.    Corrective Action Process Issue #268873 dated 02/27/09 (CGLLC087393-400)

246.    Corrective Action Process Issue #271414 dated 04/27/09 (CGLLC086937-44)

247.    Corrective Action Process Issue #272085 dated 05/26/09 (CGLLC087401-06)

248.    Corrective Action Process Issue #283571 dated 02/24/10 (CGLLC087170-76)

249.    Corrective Action Process Issue #289710 dated 06/08/10 (CGLLC087177-82)

250.    Corrective Action Process Issue #295263 dated 08/30/10 (CGLLC086964-71)

251.    Corrective Action Process Issue #304629 dated 03/02/11 (CGLLC087446-53)

| | | |
|---|---|---|
| 1 | 252. | Corrective Action Process Issue #304626 dated 03/02/11 (CGLLC087437-45) |
| 2 | 253. | Corrective Action Process Issue #310391 dated 01/25/12 (CGLLC087573-80) |
| 3 | 254. | Corrective Action Process Issue #333346 dated 11/21/12 (CGLLC086981-86) |
| 4 | 255. | Corrective Action Process Issue #337774 dated 02/04/13 (CGLLC086987-92) |
| 5 | 256. | Corrective Action Process Issue #338250 dated 02/10/13 (CGLLC086993-99) |
| 6 | 257. | Corrective Action Process Issue #338418 dated 02/12/13 (CGLLC087581-87) |
| 7 | 258. | July 2009 PDF - Customer return abnormalities |
| 8 | 259. | December 21, 2010 Email - Two TIPMs sent for testing - VTA alarm goes off |
| 9 | | by itself |
| 10 | 260. | January 7, 2011 Email - Multiple cars reporting TIPM fault #P129E |
| 11 | 261. | January 19, 2011 Powerpoint - What is known about the TIPM and what could be |
| 12 | | root cause |
| 13 | 262. | February 7, 2011 Email - List of VINs |
| 14 | 263. | 2011 Dodge Durango Marketing Material and Research |
| 15 | 264. | January 20, 2011 Email – TIPM software 08 F462 faults during turn signal |
| 16 | 265. | March 14, 2011 Email - Lots of claims, most low miles |
| 17 | 266. | April 24, 2013 Powerpoint – No start is Top 10 TIPM-7 complaint |
| 18 | 267. | October 17, 2013 Email - Seeing high TIPM-7 warranty claims |
| 19 | 268. | March 4, 2014 Email - High mileage TIPM-7 |
| 20 | 269. | May 2014 – NHTSA Recall 14V-154 Model year (Brake Booster Recall) |
| 21 | 270. | August 2014 - NHTSA Recall 14V- 391 Model year 2011 |
| 22 | 271. | July 2015 – NHTSA Recall 14V-634 |
| 23 | 272. | July 2016 – NHTSA Recall 15V-879 Model year 2011-2012 (Sun visor wiring) |
| 24 | **Defendant's Exhibits** | |
| 25 | 301. | Federal Register/Vol. 80. No. 146/Thursday, July 30, 2015 Department of |
| 26 | | Transportation Highway Traffic Safety Administration Denial of Motor Vehicle Defect Petition |
| 27 | 302. | Law Level 1 and 2 Handling and Escalation Process |
| 28 | 303. | Lemon Laws Overview |

| | | |
|---|---|---|
| 304. | Owner's Manual for Dodge Ram |
| 305. | Warranty Manual for 2012 Dodge Ram |
| 306. | TIPM7 Fuel Pump Relay Executive Review, 2014 |
| 307. | CAN C Bus Topology – 2012 Dodge Ram |
| 308. | CAN HIS Network Topology – 2012 Dodge Ram |
| 309. | CAN HIS Network Topology – 2012 Dodge Ram |
| 310. | Photograph of 2007 Wrangler TIPM7 |
| 311. | Photograph of 2007 Dodge Nitro TIPM7 |
| 312. | Photograph of 2012 Dodge Ram TIPM7 |
| 313. | Part Number List of TIPM7s 2007-2013 |
| 314. | Warranty Claim Detail Report |
| 315. | Expert file for Mr. Gozzi |
| 316. | Certificate re: Qualified Alternate Dispute Resolution Program |

**Exhibit Conference**

On or before **June 28, 2019**, counsel **SHALL** meet and confer to discuss any disputes related to the above listed exhibits and to pre-mark and examining each other's exhibits. Any exhibits not previously disclosed in discovery **SHALL** be provided via e-mail or overnight delivery so that it is received by **June 24, 2019.**

1. At the exhibit conference, counsel will determine whether there are objections to the admission of each of the exhibits and will prepare separate indexes; one listing joint exhibits, one listing Plaintiffs' exhibits and one listing Defendant's exhibits. In advance of the conference, counsel must have a complete set of their proposed exhibits to them to fully discuss whether evidentiary objections exist. Thus, any exhibit not previously provided in discovery **SHALL** be provided at least five court days in advance of the exhibit conference.

2. At the conference, counsel shall identify any duplicate exhibits, i.e., any document which both sides desire to introduce into evidence. These exhibits **SHALL** be marked as a joint exhibit and numbered as directed above. Joint exhibits **SHALL** be admitted into without further foundation.

All Joint exhibits will be pre-marked with numbers preceded by the designation "JT" (e.g.

JT/1, JT/2, etc.). As to any "Shared Exhibits," which are exhibits that both parties would like marked but to which there may be objections to their introduction, they will be appropriately marked, i.e., as "SE" and will be indexed as such on the index provided in the Shared Exhibit binder. At trial, the proponent of the exhibit will be obligated to lay the proper foundation for the exhibit unless there is a stipulation to admit the exhibit without a further showing.

Plaintiffs' exhibits will be pre-marked with numbers beginning with 1 by the designation PX (e.g. PX1, PX2, etc.). Defendant's exhibits will be pre-marked with numbers beginning with 501 preceded by the designation DX (e.g. DX501, DX502, etc.). The parties **SHALL** number each page of any exhibit exceeding one page in length (e.g. PX1-1, PX1-2, PX1-3, etc.).

If originals of exhibits are unavailable, the parties may substitute legible copies. If any document is offered that is not fully legible, the Court may exclude it from evidence.

Each joint exhibit binder shall contain an index which is placed in the binder before the exhibits. The index shall consist of a column for the exhibit number, one for a description of the exhibit and one column entitled "Admitted in Evidence" (as shown in the example below).

### INDEX OF EXHIBITS

| | | ADMITTED |
| --- | --- | --- |
| EXHIBIT# | DESCRIPTION | IN EVIDENCE |

3.      As to any exhibit which is not a joint exhibit but to which there is no objection to its introduction, the exhibit will likewise be appropriately marked, i.e., as PX1, or as DX501 and will be indexed as such on the index of the offering party.  Such exhibits will be admitted upon introduction and motion of the party, without further foundation.

4.      Each exhibit binder shall contain an index which is placed in the binder before the exhibits.  Each index shall consist of the exhibit number, the description of the exhibit and the three columns as shown in the example below.

### INDEX OF EXHIBITS

| | | ADMITTED | OBJECTION | OTHER |
| --- | --- | --- | --- | --- |
| EXHIBIT# | DESCRIPTION | IN EVIDENCE | FOUNDATION | OBJECTION |

5.      On the index, as to exhibits to which the only objection is a lack of foundation, counsel

will place a mark under the column heading entitled "Admissible but for Foundation."

6. On the index, as to exhibits to which there are objections to admissibility that are not based solely on a lack of foundation, counsel will place a mark under the column heading entitled "Other Objections."

After the exhibit conference, counsel for Plaintiffs and counsel for Defendant **SHALL** develop four complete, legible sets of exhibits. The parties **SHALL** deliver three sets of their exhibit binders to the Courtroom Clerk and provide one set to their opponent, no later than 4:00 p.m., on **August 9, 2019** Counsel **SHALL** determine which of them will also provide three sets of the joint exhibits to the Courtroom Clerk.

7. The Parties **SHALL** number each page of any exhibit exceeding one page in length.

**L.      POST-TRIAL EXHIBIT RETENTION**

Counsel who introduced exhibits at trial **SHALL** retrieve the original exhibits from the courtroom deputy following the verdict in the case. The parties' counsel **SHALL** retain possession of and keep safe, all exhibits until final judgment and all appeals are exhausted.

**M.      DISCOVERY DOCUMENTS**

The following is a list of discovery documents – portions of depositions, answers to interrogatories, and responses to requests for admissions – that the parties expect to offer at trial. NO DISCOVERY DOCUMENT, OTHER THAN THOSE LISTED IN THIS SECTION, MAY BE ADMITTED UNLESS THE PARTIES STIPULATE OR UPON A SHOWING THAT THIS ORDER SHOULD BE MODIFIED TO PREVENT "MANIFEST INJUSTICE." Fed. R. Civ. P. 16(e); Local Rule 281(b)(12).

**Plaintiff's Documents**

1.  Defendant's Responses to Plaintiff's Requests for Production of Documents

2.  Defendant's Responses to Plaintiff's Interrogatories

**Defendants' Documents**

1.  Plaintiff's Responses to Defendants' Requests for Production of Documents

2.  Plaintiff's Responses to Defendant's Interrogatories

3.  Plaintiff's Responses to Defendant's Requests for Admission

**N.     FURTHER DISCOVERY OR MOTIONS**

No further discovery is sought by either party.

**O.     MOTIONS IN LIMINE**

Any party may file motions in limine.  The purpose of a motion in limine is to establish in advance of the trial that certain evidence should not be offered at trial.  "Although the Federal Rules of Evidence do not explicitly authorize in limine rulings, the practice has developed pursuant to the district court's inherent authority to manage the course of trials."  <u>Luce v. United States</u>, 469 U.S. 38, 40 n. 2 (1984); <u>Jonasson v. Lutheran Child and Family Services</u>, 115 F. 3d 436, 440 (7th Cir. 1997). The Court will grant a motion in limine, and thereby bar use of the evidence in question, only if the moving party establishes that the evidence clearly is not admissible for any valid purpose.  <u>Id</u>.

**In advance of filing any motion in limine, counsel SHALL meet and confer to determine whether they can resolve any disputes and avoid filing motions in limine.  The conference should be in person but, if this is not possible, SHALL, at a minimum, be telephonic.  Written meet-and-confer conferences are unacceptable.  Along with their motions in limine, the parties SHALL file a certification detailing the conference such to demonstrate counsel have in good faith met and conferred and attempted to resolve the dispute.  Failure to provide the certification may result in the Court refusing to entertain the motion.**

Any motions in limine must be filed with the Court by **July 8, 2019**.  The motion must clearly identify the nature of the evidence that the moving party seeks to prohibit the other side from offering at trial. Any opposition to the motion must be served on the other party and filed with the Court by **July 15, 2019**. The Court sets a hearing on the motions in limine on **August 1, 2019**, at 10:30 a.m. Counsel may appear via teleconference by dialing (888) 557-8511 and entering Access Code 1652736, provided the Magistrate Judge's Courtroom Deputy Clerk receives a written notice of the intent to appear telephonically no later than five court days before the noticed hearing date.

The parties are reminded they may still object to the introduction of evidence during trial.

**P.     STIPULATIONS**

None.

///

24

**Q.     AMENDMENTS/ DISMISSALS**

   None.

**R.     SETTLEMENT NEGOTIATIONS**

   The parties have engaged in settlement discussions but have been unable to reach a resolution. The parties attended a settlement conference on March 20, 2018, which was not successful, but plan to continue negotiating.

**S.     AGREED STATEMENT**

   None.

**T.     SEPARATE TRIAL OF ISSUES**

   None.

**U.     APPOINTMENT OF IMPARTIAL EXPERTS**

   None requested.

**V.     ATTORNEYS' FEES**

   The parties will seek an award of attorneys' fees as appropriate as a post-trial motion.

**W.     TRIAL DATE/ ESTIMATED LENGTH OF TRIAL**

   Jury trial is set for **August 12, 2019**, at 8:30 a.m. before the Honorable Jennifer L. Thurston at the United States Courthouse, 510 19th Street, Bakersfield, California. The trial estimate is 3-4 days **The Court expects an efficient presentation of the case and will not tolerate "dead time."  Counsel SHALL plan accordingly.**

**X.     TRIAL PREPARATION AND SUBMISSIONS**

   **1.     Trial Briefs**

   The parties are relieved of their obligation under Local Rule 285 to file trial briefs. If any party wishes to file a trial brief, they must do so in accordance with Local Rule 285 and be filed on or before **August 2, 2019**.

   **2.     Jury Voir Dire**

   The parties are required to file their proposed voir dire questions, in accordance with Local Rule 162.1, on or before **July 15, 2019, 2019.**

///

25

**3.      Jury Instructions & Verdict Form**

The parties shall serve, via e-mail or fax, their proposed jury instructions in accordance with Local Rule 163 and their proposed verdict form on one another no later than **June 24, 2019.** The parties shall conduct a conference to address their proposed jury instructions and verdict form no later than **June 28, 2019**. At the conference, the parties **SHALL** attempt to reach agreement on jury instructions and verdict form for use at trial. The parties shall file all agreed-upon jury instructions and verdict form no later than **July 15, 2019** and identify such as the agreed-upon jury instructions and verdict forms. At the same time, the parties **SHALL** lodge via e-mail a copy of the joint jury instructions and joint verdict form (in Word format) to JLTOrders@caed.uscourts.gov.

**If and only if, the parties after a genuine, reasonable and good faith effort**, cannot agree upon certain specific jury instructions and verdict form, the parties shall file their respective proposed (disputed) jury instructions and proposed (disputed) verdict form no later than **July 15, 2019** and identify such as the disputed jury instructions and verdict forms.  At the same time, the parties **SHALL** lodge via e-mail, a copy of his/their own (disputed) jury instructions and proposed (disputed) verdict form (in Word format) to JLTOrders@caed.uscourts.gov.

In selecting proposed instructions, the parties shall use Ninth Circuit Model Civil Jury Instructions or California's CACI instructions to the extent possible.  All jury instructions and verdict forms shall indicate the party submitting the instruction or verdict form (i.e., joint, plaintiff's, defendant's, etc.), the number of the proposed instruction in sequence, a brief title for the instruction describing the subject matter, the **complete** text of the instruction, and the legal authority supporting the instruction.  Each instruction **SHALL** be numbered.

**Y.      OBJECTIONS TO PRETRIAL ORDER**

Any party may, within 10 days after the date of service of this order, file and serve written objections to any of the provisions set forth in this order. Such objections shall clearly specify the requested modifications, corrections, additions or deletions.

**Z.      MISCELLANEOUS MATTERS**

None.

///

**AA. COMPLIANCE**

      **Strict compliance with this order and its requirements is mandatory. All parties and their counsel are subject to sanctions, including dismissal or entry of default, for failure to fully comply with this order and its requirements.**

IT IS SO ORDERED.

    Dated:   **June 17, 2019**                 **/s/ Jennifer L. Thurston**
                                          UNITED STATES MAGISTRATE JUDGE