UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JULIAN III FLORES, et al.,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>FCA US LLC,<br><br>　　　　　Defendant. | Case No.: 1:17-cv-00427 JLT<br><br>ORDER ON MOTIONS IN LIMINE[1]<br>(Docs. 55-56, 59-63) |

The Flores' purchased a 2012 Dodge Ram 1500 on September 4, 2011, which they contend had serious defects and nonconformities to warranty. Plaintiffs contend FCA UC LLC manufactured the vehicle and is liable for violations of the Song-Beverly Consumer Warranty Act and fraudulent inducement under California law. The defendant denies these claims.

**I.　Legal Standards Governing Motions in Limine**

"Although the Federal Rules of Evidence do not explicitly authorize in limine rulings, the practice has developed pursuant to the district court's inherent authority to manage the course of trials." Luce v. United States, 469 U.S. 38, 40 n. 2 (1984). The Ninth Circuit explained motions in limine "allow parties to resolve evidentiary disputes ahead of trial, without first having to present potentially prejudicial evidence in front of a jury." Brodit v. Cabra, 350 F.3d 985, 1004-05 (9th Cir.

---

[1] After reviewing the moving and opposing papers, the Court finds the matter suitable for decision without hearing. Thus, the hearing on the motions in limine is VACATED.

2003) (citations omitted).

Importantly, motions in limine seeking the exclusion of broad categories of evidence are disfavored. See Sperberg v. Goodyear Tire and Rubber Co., 519 F.2d 708, 712 (6th Cir. 1975). The Court "is almost always better situated during the actual trial to assess the value and utility of evidence." Wilkins v. Kmart Corp., 487 F. Supp. 2d 1216, 1218 (D. Kan. 2007). The Sixth Circuit explained, "[A] better practice is to deal with questions of admissibility of evidence as they arise [in trial]" as opposed to ruling on a motion in limine. Sperberg, 519 F.2d at 712. Nevertheless, motions in limine are "an important tool available to the trial judge to ensure the expeditious and evenhanded management of the trial proceedings." Jonasson v. Lutheran Child & Family Services, 115 F.3d 436, 440 (7th Cir. 1997).

"[A] motion in limine should not be used to resolve factual disputes or weigh evidence," C & E Services, Inc. v. Ashland Inc., 539 F. Supp. 2d 316, 323 (D. D.C. 2008), because that is the province of the jury. See Reeves v. Sanderson Plumbing Products, 530 U.S. 133, 150 (2000). The Court will bar use of the evidence in question only if the moving party establishes that the evidence clearly is not admissible for any valid purpose. Jonasson, 115 F. 3d at 440.

For example, under the Federal Rules of Evidence, any evidence that is not relevant is not admissible. Fed. R. Evid. 402. To determine that evidence is relevant, the Court must find "(a) it has a tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. Nevertheless, relevant evidence may be excluded "if its probative value is substantially outweighed by the danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

The rulings on the motions in limine made below do not preclude either party from raising the admissibility of the evidence discussed herein, if the evidence adduced at trial demonstrate a change of circumstances that would make the evidence admissible, such as for impeachment or if the opponent opens the door to allow for its admissibility. However, if this occurs, the proponent of the evidence **SHALL** raise the issue with the Court outside the presence of the jury. Finally, the rulings made here are binding on all parties and their witnesses and not merely on the moving party.

## II. Plaintiffs' Motions in Limine

### A. Plaintiffs' motion in limine No. 1 (Doc. 55)

Plaintiffs seek to exclude evidence that they did not make use of the Better Business Bureau's arbitration service. (Doc. 55) They argue that whether they took steps to resolve the dispute or make sufficient effort to seek repurchase is irrelevant because California law has no such requirement. Consequently, the plaintiffs assert that any argument or evidence suggesting he failed to act reasonably in this regard is irrelevant or misleading.

Nevertheless, the plaintiffs argue that FCA's refusal to repurchase or replace the defective vehicle is relevant to his prayer for civil penalties. Song-Beverly provides for civil penalties where a plaintiff establishes that a defendant's failure to comply with an obligation of that statute was willful. Cal. Civ. Code § 1794(c). A jury can find that a violation was willful where a manufacturer "refused a refund or replacement on the ground a reasonable number of repair attempts had not been made, without making any effort to gather the available information on repair history. . ." Kwan v. Mercedes-Benz of N. Am., Inc., 23 Cal.App.4th 174, 185 (1994).

The plaintiffs also seek to preclude FCA from examining them about why they "did not do more to obtain a buy-back prior to filing a lawsuit" because Song-Beverly places the burden on the manufacturer to monitor warranty repair attempts and "does not require consumers to take any affirmative steps to secure relief for the failure of a manufacturer to service or repair a vehicle to conform to applicable warranties-other than, of course, permitting the manufacturer a reasonable opportunity to repair the vehicle," even though, "as a practical matter," most consumers likely will make such a request. Krotin v. Porsche Cars N. Am., Inc., 38 Cal.App.4th 294, 302-303 (1995), as modified on denial of reh'g (Sept. 14, 1995); see also id. at 303 ("As it stands now, however, the manufacturer has an affirmative duty to replace a vehicle or make restitution to the buyer if the manufacturer is unable to repair the new vehicle after a reasonable number of repair attempts, and the buyer need not reject or revoke acceptance of the vehicle at any time. The buyer need only provide the manufacturer with a reasonable opportunity to fix the vehicle."); Lukather v. Gen. Motors, LLC, 181 Cal. App. 4th 1041, 1050 (2010) (citing Krotin and rejecting the defendant's contention that plaintiff "himself had a duty to act promptly under the Act").

3

The Court agrees that though the plaintiffs are not required to affirmatively request repurchase, if he chooses to testify that he requested repurchase, the defense is entitled to question him about this action. Whether he sought arbitration through the BBB, however, is irrelevant and may not be admitted. Whether FCA maintains an informal dispute solution program is pertinent to the penalties the plaintiffs seek and is admissible. Thus, the motion is **GRANTED IN PART**.

### B. Plaintiffs' motion in limine No. 2 (Doc. 56)

The plaintiffs seek to exclude expert testimony from FCA's "person most knowledgeable." (Doc. 56) The plaintiffs assert they noticed and took the deposition of FCA's person most knowledgeable and that FCA produced Michael McDowell. Id. at 6.

FCA counters that the plaintiffs did not notice a PMK deposition, did not take such a deposition and that FCA did not offer Mr. McDowell as the PMK. (Doc. 72) FCA notes also that Ms. Dietrich—its intended coroporate witness—Is a long-time employee who, due to this experience working for FCA, has personal knowledge about various topics including the Customer Assistance Inquiry Records. FCA clarifies that it has no intention of seeking testimony that is beyond Ms. Dietrich's personal knowledge and which strays into expert testimony. At this point, the Court lacks sufficient information to determine whether FCA complied with Fed.R.Civ.P 26. Thus, it **RESERVES** ruling on this issue. If plaintiffs produce a deposition notice for FCA's PMK and produces a transcript of the deposition—which would support their claims that FCA has switched their corporate witness—the Court will entertain the motion on this basis. Failing that, the Court will presume the motion is withdrawn, on this basis.

If the plaintiffs intend to ask questions of Ms. Dietrich as to whether FCA's conduct conformed to FCA's policies and other such questions that requires Ms. Dietrich to offer lay opinions, FCA is entitled to question Ms. Dietrich similarly. In any event, FCA is entitled to call this witness, assuming she can offer relevant and admissible testimony. Neither party is entitled to ask Ms. Dietrich any questions that would urge her to stray into expert territory and she is not permitted to offer an expert opinion. Consequently, the motion is **DENIED IN PART** and **RESERVED IN PART**.

///
///

4

### III. Defendant's Motions in Limine

#### A. Defendant's motion in limine No. 1 (Doc. 59)

The defendant seeks to exclude the testimony or Dr. Barbara Luna. (Doc. 59) The plaintiffs report that Dr. Luna will testify,

> as to matters including, but not limited to, corporate business culture, corporate customs and practices, and corporate standards of concealing or omitting material information. Ultimately, Dr. Luna's testimony will likely center around issues pertaining to whether Chrysler's business practices were deceptive and being performed in compliance with Chrysler's various disclosure obligations and its own code of conduct.

(Doc. 64 at 8) She'll testify about,

> whether or not the internal documents obtained from Chrysler show that its corporate officials had knowledge of the TIPM defects, and whether such knowledge and the nondisclosure of such defects complied with Chrysler's disclosure obligations under applicable regulations and its own code of conduct, and presented evidence of questionable corporate practices.

Id. at 4. She will testify also that,

> based on her review of thousands of pages of Chrysler's corporate records, the management and director at Chrysler had actual notice of information that relates to reported problems that were attributed by Chrysler's own personnel to the TIPM-7, and that Chrysler concealed those facts from Plaintiff and other customers alike."

Id. at 5. The plaintiffs argue,

> Dr. Luna has specialized knowledge in this area to explain how specific communications and corporate decisions reveal Chrysler's knowledge, its failure to abide by its disclosure obligations and its own code of conduct, in order that the jury may reach a conclusion about Chrysler's intent to defraud consumers.[2]

Id. at 8.

Under Federal Rule of Evidence Rule 702, an expert witness may testify as to his opinions if: "(a) the expert's . . . specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and

---

[2] The Court is not certain how Dr. Luna's expertise allows her to offer these opinions because the plaintiffs failed to address this point. Her background, from what the Court has learned by reviewing other cases in which she has been involved and which are accessible on WestLaw, implies her fraud investigation expertise relates to accountancy, rather than fraudulent concealment of facts to the consumer.

5

methods to the facts of the case." Id. The Court is obligated to serve in a "gatekeeping" function. Kumho Tire Co. v. Carmichael, 526 U.S. 137, 147 (1999). The trial court must make an initial assessment of the proposed expert testimony to ensure that it "rests on a reliable foundation and is relevant to the task at hand." Daubert, 509 U.S. at 597. In other words, the trial court must consider (1) whether the reasoning or methodology underlying the expert testimony is valid (the reliability prong); and (2) whether the reasoning or methodology can be applied to the facts in issue (the relevancy prong). See id. at 592-93.

To determine the reliability of expert testimony, the Supreme Court has identified four factors that a trial court may consider: "(1) whether the 'scientific knowledge . . . can be (and has been) tested'; (2) whether 'the theory or technique has been subjected to peer review and publication'; (3) 'the known or potential rate of error'; and (4) 'general acceptance.'" Obrey v. Johnson, 400 F.3d 691, 696 (9th Cir. 2005) (quoting Daubert, 509 U.S. at 593-94). These factors, however, are not exclusive. See Kumho Tire, 526 U.S. at 150 ("Daubert makes clear that the factors it mentions do not constitute a definitive checklist or test." (emphasis in the original) (citation and internal quotation marks omitted)). Rather, the trial court enjoys "broad latitude" in deciding how to determine the reliability of proposed expert testimony. Id. at 141-42. "[T]he test under Daubert is not the correctness of the expert's conclusions but the soundness of his methodology." Daubert v. Merrell Dow Pharms., Inc., 43 F.3d 1311, 1318 (9th Cir. 1995) ("Daubert II"). Second, the proposed expert testimony must be "relevant to the task at hand," meaning that it "logically advances a material aspect of the proposing party's case." Daubert, 509 U.S. at 597. The Supreme Court has explained that expert testimony is relevant if it assists the trier of fact in understanding evidence or determining a fact in issue in the case. Daubert, 509 U.S. at 591.

Dr. Luna is a forensic accountant and damages and valuation expert. She authored an expert report in this case (which has not been provided). Plaintiffs argue that Dr. Luna has a reliable basis in the knowledge and experience of the relevant discipline because she has "thirteen certifications and accreditations regarding his analysis of business dealings, including [a] license as a Certified Fraud Examiner" and has "over 30 years of experience as a forensic accountant as well as experience analyzing damages and valuation of corporate business dealings." (Doc. 64 at 7) The plaintiffs argue

that Dr. Luna's testimony falls outside the ordinary knowledge of the jury and that her expertise concerning business practices and whether Chrysler acted in compliance with its "various disclosure obligations and its own code of conduct" will be helpful to the jury. Id. at 8.

The Court agrees that Dr. Luna's lack of firsthand automotive engineering knowledge does not render all of her testimony inadmissible. "[E]xpert opinions may find a basis in part 'on what a different expert believes on the basis of expert knowledge not possessed by the first expert,'" and this is in fact "common in technical fields." In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prod. Liab. Litig., 978 F.Supp.2d 1053, 1066 (C.D. Cal. 2013) (quoting Dura Auto. Sys. of Ind., Inc. v. CTS Corp., 285 F.3d 609, 613 (7th Cir. 2002)). An expert may not merely act as a conduit for another expert's testimony or simply vouch for another expert but may rely on another expert's opinion in formulating her own opinion does not on its own run afoul of Rule 702. Nor does the fact that Dr. Luna was provided internal FCA documents from counsel or that she read about certain allegations in the Complaint render her testimony unreliable. Rule 703 provides that "[a]n expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed." Fed. R. Evid. 703; see, e.g., In re Bard IVC Filters Prod. Liab. Litig., No. MDL 15-02641-PHX DGC, 2017 WL 6554163, at *2 (D. Ariz. Dec. 22, 2017) ("Those documents are factual evidence in this case, and experts clearly are permitted to take factual evidence into account."). Notably, however, the complaint merely should inform Dr. Luna of what the plaintiffs allege, but she cannot be a conduit to parade counsel's unverified assertions before the jury

Of greatest concern to the Court is the lack of information Dr. Luna possesses related to the TIPM at issue. She did not review the report of plaintiffs' automotive expert and indicated that any mechanical issues related to the TIPM were not within her expertise and she would rely upon the engineering expert. As noted above, she intends to testify as to the problems with the "TIPM" and with the TIPM-7, but she admits she has no expertise to opine as to which version of the TIPM is at issue in this case. Given this, there is no showing how her testimony is relevant if she, herself, can't say that emails from 2007 relate to the TIPM at issue in the plaintiffs' 2012 Dodge Ram 1500 or to some other version of this module.

If it is her intent to summarize emails and other Chrysler documents she read and provide the

7

jury with a roadmap of who said what to whom, this information is only pertinent to the extent the emails and documents relate to the version of the TIPM-7 installed in the plaintiffs' truck. Though the plaintiffs are correct that Dr. Luna's opinions may be based upon information that is not within her personal knowledge; even still, it must be based upon *knowledge*. For example, though Dr. Luna will testify that FCA knew since 2007 that the TIPM system was defective, she has no knowledge or expertise to determine whether the TIPM system at issue was the same TIPM system that existed in 2007 or whether it is the same TIPM discussed in the emails. At her deposition, she admitted to not having spoken to the automotive expert on this topic or reviewing his report or notes. In doing so, however, it is undisputed that Dr. Luna lacks the expertise to form any conclusions about the mechanics at issue. Id. at 37; See e.g., Base v. FCA US LLC, 2019 WL 1117532, at *8 (N.D. Cal. Mar. 11, 2019) [Dr. Luna not permitted to offer testimony that is not supported by adequate mechanical opinions by the expert.]

In short, it appears many of Dr. Luna's assumptions, which constitute the bases for the conclusions she had formed by the time she wrote her report and sat for her deposition, are based on no evidence at all. Because her opinions related to the defectiveness of the TIPM system at issue or when the defendant first learned of the defective nature of the TIPM system at issue, are only as good as the evidence upon which they are based, it does not appear that her opinions in this regard would assist the trier of fact.[3] An expert's obligation is not to form her opinions first and then later be apprised of evidence that may support them; she must first be apprised of the evidence and *then* form her opinions. She must include all of her opinions and the bases for them in her Rule 26 report and must be prepared to be fully examined on the topics upon which she has opined, including the underpinnings for her opinions. That did not occur here.

All things being equal, the Court's order would have allowed Dr. Luna to testify as to documents she reviewed related to the version of the TIPM-7 installed in the plaintiffs' vehicle. However, she is unable to distinguish the relevant documents. Thus, Dr. Luna may offer no opinion

---

[3] The plaintiffs bears the burden of proving the Daubert standards for the admissibility of Dr. Luna's testimony. Fed. R. Evid. 702 advisory committee's note to 2000 amendment; Lust v. Merrell Dow Pharms., Inc., 89 F.3d 594, 598 (9th Cir. 1996).

about whether the TIPM-7 system installed in the plaintiffs' vehicle was defective, when or whether the defendant knew of any defect in the TIPM-7 system installed in the plaintiffs' vehicle, whether documents demonstrate the TIPM-7 system installed in the plaintiffs' vehicle was defective or whether the defendant acted in such a way as to mislead the plaintiffs or others or whether the defendant fraudulently concealed any purported defect in the TIPM-7 system installed in the plaintiffs' vehicle.

Likewise, the Court disagrees that Chrysler's "code of conduct" has any bearing on any liability or damage questions in this case, including the defendant's intent, and, it appears, using it is intended only to inflame the jury. It is, therefore, excluded under Rule 403.

Finally, the Court cannot presently determine whether there exists any foundation that would allow Dr. Luna to testify about "applicable regulations" (generally, experts are not entitled to opine as to the obligations imposed by law). Either party is free to address whether Dr. Luna's testimony should be precluded entirely according to the Daubert standards or other legal authority at the time of trial, outside the presence of the jury. Accordingly, the motion is **GRANTED in PART**.

**B.     Defendant's motions in limine No. 2 (Doc. 60); No. 3 (Doc. 61) and No. 4 (Doc. 62)**

In its motion in limine No. 2, the defendant seeks to exclude exhibits 101, 103-11, 115-116 and 138. The defendant argues that these documents are National Highway Transportation Safety Administration documents or Technical Service Bulletins for vehicles other than the 2012 Dodge Ram. The defendant argues the recalls discussed in the NHTSA documents "will not identify any of the alleged defects" of the plaintiffs' 2012 Dodge Ram. (Doc. 60 at 3) The defense argues further that the Technical Service Bulletins—which are advisory documents sent to Chrysler dealerships to alert them to potential mechanical issues—did not apply to the 2012 Dodge Ram 1500 and there is no evidence the plaintiffs' vehicle suffered from any of these complaints. Id.

The defendant also seeks to exclude exhibits 112-113, 117, 119-126, 129 and 139-143 in its motion in limine No. 3 (Doc. 61). These documents are emails that reference the TIPM-7, though they do not refer either to the 2012 Dodge Ram 1500 or problems noted in the 2012 Dodge Ram 1500. The defense also argues that the plaintiffs and, presumably, their witnesses lack personal knowledge of the contents of the documents.

Likewise, the defendant's motion in limine No. 4 seeks to exclude exhibits 114, 118, 127-128

and 131-137 (Doc. 62). These exhibits were prepared by nonparties, Continental, NEC/TOKIN and TYCO Electronics.[4] The defense contends the documents do not relate to the 2012 Dodge Ram and "are not relevant to any mechanical issue in Plaintiffs' vehicle," and do not demonstrate any prior knowledge by Chrysler of a defect in the TIPM-7. Thus, the defendant contends these documents are irrelevant.

The plaintiffs argue that the TIPM-7—which was installed on many makes and models of Chrysler vehicles—suffered from various defects as evidenced by the exhibits at issue. The plaintiffs' expert will opine that these documents placed FCA on notice that the TIPM-7 should have been scrapped and reengineered, rather than making corrections that constitute "band-aids" covering the systemic problem of the TIPM-7. (Doc. 65 at 2-3) The plaintiffs will argue that the TIPM-7's defects manifested in various ways, even though only a few of these manifestations were shown in the plaintiffs' truck. Id. The expert will opine that because the defendant knew of the problems with the TIPM-7 when it sold the truck to the plaintiffs—no matter in which type of vehicle the problems existed or, even, what the problems were—this demonstrates fraudulent concealment of the defect in the TIPM-7 installed in the plaintiffs' truck. Id.

It appears that plaintiffs contend that problems with the TIPM-7 can manifest themselves in so many different ways as to permit introduction of documents related to any purported manifestation regardless of whether plaintiffs' specific vehicle or the 2012 Dodge Ram 1500 pickups as a whole, experienced these problems. The Court disagrees. Though the plaintiffs have not shown the documents to be relevant, even if they are relevant, they have the significant potential of prejudice to the defense because they would suggest to the jury that the myriad of problems demonstrated by other types of vehicles with a TIPM—even if the TIPM at issue was not the same version as in the plaintiffs' vehicle—must mean that the problems with plaintiffs' car must have been caused by the TIPM-7. There is no showing that this "me too" evidence should be allowed here. Evidence concerning problems not experienced by or not directly related to plaintiffs' type of vehicle is irrelevant, confusing and unduly prejudicial under Rules 401 and 403 and are excluded.

---

[4] There appears also to be a dispute also as to whether the agreement entered into in other cases to allow the documents produced in the Velasco class action to be used at trial without an authenticating witness, applies to this case.

10

Consequently, the motions are **GRANTED in PART.**

### C. Defendant's motions in limine No. 5 (Doc. 63)

The defense seeks to exclude exhibit 63, which is an order issued in a class action case which complained of TIPM issues. The defense explains that this order does not relate to the 2012 Dodge Ram 1500 and so it is irrelevant. The plaintiffs do not oppose this motion.

The Court notes that it is obligated to instruct the jury on the law. The Court has not been shown that the jury should be guided by what the court decided in <u>Velasco</u>. Likewise, due to the failure to oppose the motion, the Court has no information at all that there exists a reasoned and legal basis for the document to be introduced. Thus, the motion is **GRANTED**.

IT IS SO ORDERED.

Dated: **July 18, 2019**　　　　　　　　　**/s/ Jennifer L. Thurston**
　　　　　　　　　　　　　　　　　　　UNITED STATES MAGISTRATE JUDGE