1

2

3

4

5

6

7

8 **UNITED STATES DISTRICT COURT**

9 **EASTERN DISTRICT OF CALIFORNIA**

10

| | |
|---|---|
| JULIAN III FLORES and ALEJANDRA FLORES, | ) Case No.: 1:17-cv-0427 - JLT ) |
| Plaintiffs, | ) ORDER GRANTING IN PART PLAINTIFF'S ) MOTION FOR ATTORNEY FEES AND COSTS ) |
| v. | ) ) (Doc. 84) |
| FCA US LLC, et al., | ) ) |
| Defendants. | ) ) |

Julian III Flores and Alejandra Flores asserted in their complaint that FCA US LLC violated of the Song-Beverly act and committed fraudulent inducement under California law. The parties settled the underlying claims, and Plaintiffs now seek an award of attorney fees and costs. (Doc. 84) For the reasons set forth below, Plaintiffs' motion is **GRANTED** in part, in the modified amount of $23,220.55.

**I.      Background**

Plaintiffs purchased a Dodge Ram 1500 on September 4, 2011. (Doc. 1-1 at 5, ¶ 9; *see also id.* at 36) Plaintiffs assert this vehicle "was delivered to [them] with serious defects and nonconformities to warranty and developed other serious defects and nonconformities to warranty including, but not limited to[,] transmission, electrical, suspension, and engine defects." (*Id.* at 27, ¶ 142)

Plaintiffs report their vehicle "was factory-equipped" by Defendant with a Totally Integrated Power Module ("TIPM"), which "is the chief component in the … power distribution systems and

1

consists of a computer, relays, fuses, and controls." (Doc. 1-1 at 5, ¶¶ 12-13) According to Plaintiffs, "The TIPM provides the primary means of voltage distribution and protection for the entire vehicle..." (*Id.*, ¶ 13) Electrical systems receiving power from the TIPM included the vehicle's "safety systems, security system, ignition system, fuel system, electrical powertrain, and … comfort and convenience systems." (*Id.*, ¶ 14)

Plaintiffs contend the TIPM installed in their vehicle was defective and failed "to reliably control and distribute power to various vehicle electrical systems and component parts," which caused the check engine line to come on frequently, irregular engine noises, and leaks. (Doc. 1-1 at 6, ¶ 16) In addition, Plaintiffs allege the TIPM "is likely to cause a variety of electrical issues[,] such as a loss of headlight function, and unexpected distractions, such as the vehicle's horn or alarm sounding while on a roadway, which may increase the risk of injury for the driver, passengers, or others on the roadway." (*Id.*, ¶ 17)

According to Plaintiffs, "FCA US LLC had superior and exclusive knowledge of the TIPM defects, and knew or should have known that the defects were not known by or reasonably discovered by Plaintiffs before [they] purchased or leased the Subject Vehicle." (Doc. 1-1 at 6, ¶ 20) Plaintiffs report: "FCA US LLC vehicles have been plagued with severe TIPM problems for the last decade. As a result, FCA US LLC has initiated multiple TIPM-related recalls to address safety or emissions concerns." (*Id.* at 7, ¶ 21) Further, Plaintiffs assert the TIPM "defect is so widespread that … replacement parts have often been on national backorder, with drivers reporting from 2011 to 2014 that they had to wait weeks or months of have their TIPMs replaced." (*Id.*, ¶ 23) They allege FCA UC LLC dealers and auto-technicians were "advising many drivers to not drive their vehicles until the TIPM [was] replaced, due to safety risks." (*Id.*) However, Defendant did not disclose the defect to Plaintiffs "prior to the sale of the vehicle (*Id.* at 21, ¶ 108)

In August 2015, Plaintiffs "became aware of a class action settlement involving the [TIPM]." (Doc. 1-1 at 20, ¶ 108) Plaintiffs report they "researched the class action and its allegations that the TIPM is defective and poses a safety hazard." (*Id.*) According to Plaintiffs, they "gave timely notice [their] claims against FCA US LLC in the present action as a putative class member in … *Velasco, et al v. Chrysler Group LLC,* United States District Court, Central District of California, Case No. 2:13-

cv-08080-DDP-VBK, which was filed on November 1, 2013." (*Id.* at 22, ¶ 113)

In the initial complaint filed in *Velasco*, the allegations were "based on the same subject matter and similar evidence" as those presented in this action. (Doc. 1-1 at 24, ¶ 125) Plaintiffs were putative class members in *Velasco*, but "were ultimately defined out of the final settlement class." (*Id.* at 25, ¶ 130) Plaintiffs explain the class definition identified in the complaint "included Plaintiffs' 2012 Dodge Ram 1500." (*Id.*, ¶ 132) However, the final settlement class was defined as including: "All persons who purchased or leased a model- year 2011, 2012, and/or 2013 Dodge Durango or Jeep Grand Cherokee vehicle in the United States." (*Id.* at 26, ¶ 134) Thus, Plaintiffs' vehicle was "not included in the final class definition." (*Id.*, ¶ 138)

On October 21, 2016, Plaintiffs filed their complaint in Tulare County Superior Court, Case No. 267317. (*See* Doc. 1-1 at 3) Plaintiffs identified the following causes of action in their complaint: (1) breach of an express warranty pursuant to the Song-Beverly Act, (2) breach of an implied warranty pursuant to the Song-Beverly Act, and (3) fraudulent inducement- concealment. (*Id.* at 3, 26-31) Plaintiffs' prayer for relief included, but was not limited to: general, special and actual damages; "recession of the purchase contract and restitution of all monies expended;" diminution in value; civil penalties totaling twice their actual damages; and reasonable attorney fees and costs. (*Id.* at 31-32) Defendant filed its answer on November 17, 2016, asserting in part that "Plaintiffs' entire Complaint is moot based upon the fact that FCA US LLC offered to repurchase Plaintiffs' vehicle," which would "provide[] Plaintiffs with full recompense for any alleged harm." (Doc. 1-4 at 7, ¶ 22)

On March 23, 2017, Defendant filed a Notice of Removal pursuant to 28 U.S.C. §§ 1332, 1441(a) and 1446(a), thereby initiating the matter with this court. (Doc. 1) Plaintiff filed a motion to remand the action to the state court on June 5, 2017. (Doc. 11) The Court determined it had diversity jurisdiction over the action and denied the motion to remand on August 30, 2017. (Doc. 17)

The trial in the action was set for August 12, 2019. (Doc. 42) The parties prepared for the trial, and filed a joint pre-trial statement on June 12, 2019. (Doc. 46) Thereafter, the parties filed motions in limine, which were addressed by the Court on July 18, 2019. (Doc. 73) On August 1, 2019, the parties informed the Court that they "reached a settlement in principle," and requested the trial date be vacated "while settlement [was] pending." (Doc. 76 at 2) Accordingly, the Court vacated the trial and ordered

the parties to file a stipulation to dismiss the action no later than September 13, 2019.  (Doc. 77)  After the parties reported they had not come to an agreement on the amount of fees, Court granted the parties an extension of time, and directed Plaintiffs to either file a motion for attorney fees or dismissal documents no later than December 2, 2019.  (Doc. 82)

Plaintiffs filed a bill of costs on October 23, 2019.  (Doc. 83)  The same date, Plaintiffs filed their motion for attorney fees, costs, and expenses now pending before the Court.  (Doc. 84)  Defendant filed its objections to the bill of costs on October 30, 2019 (Doc. 86) and its opposition to the motion for fees on November 7, 2019 (Doc. 87)  Plaintiffs filed their reply on November 14, 2019.  (Doc. 88)

## II.    Legal Standard

"In a diversity case, the law of the state in which the district court sits determines whether a party is entitled to attorney fees, and the procedure for requesting an award of attorney fees is governed by federal law.  *Carnes v. Zamani*, 488 F.3d 1057, 1059 (9th Cir. 2007); *see also Mangold v. Cal. Public Utilities Comm'n*, 67 F.3d 1470, 1478 (9th Cir. 1995) (noting that in a diversity action, the Ninth Circuit "applied state law in determining not only the right to fees, but also in the method of calculating the fees").

As explained by the Supreme Court, "[u]nder the American Rule, 'the prevailing litigant ordinarily is not entitled to collect a reasonable attorneys' fee from the loser.'"  *Travelers Casualty & Surety Co. of Am. v. Pacific Gas & Electric Co*., 549 U.S. 443, 448 (2007) (quoting *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 247 (1975)).  However, a statute allocating fees to a prevailing party can overcome this general rule.  *Id.* (citing *Fleischmann Distilling Corp. v. Maier Brewing Co*., 386 U.S. 714, 717 (1967)).  Under California's Song-Berverly Act, a prevailing buyer is entitled "to recover as part of the judgment a sum equal to the aggregate amount of costs and expenses, including attorney's fees based on actual time expended, determined by the court to have been reasonably incurred by the buyer in connection with the commencement and prosecution of such action."  Cal. Civ. Code § 1794(d).

The Song-Beverly Act "requires the trial court to make an initial determination of the actual time expended; and then to ascertain whether under all the circumstances of the case the amount of actual time expended and the monetary charge being made for the time expended are reasonable."

4

*Nightingale v. Hyundai Motor America*, 31 Cal.App.4th 99, 104 (1994). The court may consider "factors such as the complexity of the case and procedural demands, the skill exhibited and the results achieved." *Id.* If the court finds the time expended or fee request "is not reasonable under all the circumstances, then the court must take this into account and award attorney fees in a lesser amount." *Id.* "A prevailing buyer has the burden of showing that the fees incurred were 'allowable,' were 'reasonably necessary to the conduct of the litigation,' and were 'reasonable in amount.'" *Id.* (quoting *Levy v. Toyota Motor Sales, U.S.A., Inc.*, 4 Cal. App. 4th 807, 816 (1992)); *see also Goglin v. BMW of North America, LLC,* 4 Cal. App. 5th 462, 470 (2016) (same).

If a fee request is opposed, "[g]eneral arguments that fees claimed are excessive, duplicative, or unrelated do not suffice." *Premier Med. Mgmt. Sys. v. Cal. Ins. Guarantee Assoc.*, 163 Cal. App. 4th at 550, 564 (2008). Rather, the opposing party has the burden to demonstrate the hours spent are duplicative or excessive. *Id.* at 562, 564; *see also Gorman v. Tassajara Dev. Corp.*, 178 Cal. App. 4th 44, 101 (2009) ("[t]he party opposing the fee award can be expected to identify the particular charges it considers objectionable").

**III.    Evidentiary Objections**

Both parties object to evidence presented in support of and in opposition to the motion for fees and costs. (Doc. 87-3; Doc. 88-1) The Court has read and considered each objection made by Defendant and Plaintiffs, and to the extent the Court considers any evidence to which there was an objection in its analysis, the objection is overruled.

**IV.    Discussion and Analysis**

As prevailing buyers, Plaintiffs are entitled to fees and costs under the Song-Beverly Act. *See* Cal. Civ. Code § 1794(d); *see also Goglin,* 4 Cal.App.5th at 470. Plaintiffs seek: (1) an award of attorneys' fees pursuant to the Song-Beverly Act in the amount of $45,951.25; (2) a lodestar multiplier of 0.5, in the amount of $22,975.63; and (3) actual costs and expenses of $13,182.90. (Doc. 83 at 1; Doc. 84 at 2) Thus, Plaintiffs request a total award of $82,109.78. (Doc. 84 at 2)

Defendant acknowledges that "Plaintiffs are entitled to recover attorney's fees, costs, and expenses," but argues the Song-Beverly Act "does not authorize a blank check" and the amount requested is unreasonable. (*See* Doc. 87 at 6) Defendant proposes the fee award to Plaintiffs reflect the

following: (1) reduction of fees incurred for duplicative, unnecessary, and clerical tasks; (2) a deduction of 20 percent due to the practice of quarter-hour billing practice of Hackler, Daghighian, Martino & Novak; (3) and a reduction in the hourly rate to reflect rates reasonable in Fresno Division of the Eastern District. (*Id.* at 6-13) In addition, Defendant contends a multiplier award is not appropriate in this action. (*Id.* at 14-17)

### A. Fee Request

Plaintiffs seek lodestars in the amount of $29,457.50 for the work completed by Knight Law Group and $16,493.75 for work completed by Hackler Daghighian Martino & Novak, P.C., which "work[ed] with Knight Law on this case to prepare the case for trial." (Doc. 84-1 at 11, 13; Doc. 84-2, Mikhov Decl. ¶ 2)

#### 1. Hours worked by counsel

A fee applicant must provide time records documenting the tasks completed and the amount of time spent. *Hensley v. Eckerhart*, 461 U.S. 424, 424 (1983); *Welch v. Metropolitan Life Ins. Co.*, 480 F.3d 942, 945-46 (9th Cir. 2007). Under California law, a court "must carefully review attorney documentation of hours expended" to determine whether the time reported was reasonable. *Ketchum v. Moses*, 24 Cal.4th 1122, 1132 (2001) (quoting *Serrano v. Priest*, 20 Cal.3d 25, 48 (1977)). Thus, evidence provided by the fee applicant "should allow the court to consider whether the case was overstaffed, how much time the attorneys spent on particular claims, and whether the hours were reasonably expended." *Christian Research Inst. v. Alnor*, 165 Cal. App. 4th 1315, 1320 (2008). The court must exclude "duplicative or excessive" time from its fee award. *Graciano v. Robinson Ford Sales, Inc.*, 144 Cal.App.4th 140, 161 (2006); *see also Ketchum*, 24 Cal.4th at 1132 ("inefficient or duplicative efforts [are] not subject to compensation").

Defendant objects to the hours reported by Plaintiffs' counsel, asserting "Plaintiffs fail to offer any explanation ... for why it took two firms who claim to be experts in their field to handle this routine case." (Doc. 87 at 7) According to Defendant, "[t]here is inherent duplication of effort in [this] management style." (*Id.*) Defendant asserts the submitted the invoices include duplicative tasks between the attorneys and firms; improper block billing; and attorneys billing for administrative or clerical tasks, which should be omitted from the lodestar calculation. (*Id.* at 8-10)

6

### a. Work completed by Knight Law Group

The billing records submitted by Knight Law Group indicate the attorneys expended 79.8 hours on this action, through the preparation of the motion for fees and costs. (*See* Doc. 84-2 at 19-24) Defendant objects to the hours reported contends "most of the work was formulaic." (*See* Doc. 87 at 14) According to Defendant, the invoice from Knight Law Group includes excessive time and unnecessary time related to document preparation and review, including duplicative efforts and clerical tasks. (*Id.* at 7-9)

### i. Work related to the motion to remand

According to Defendant, Plaintiffs should not recover fees related to the motion to remand, which challenged this Court's diversity jurisdiction on the grounds that the parties were not diverse and the amount in controversy requirement of $75,000.00 was not satisfied. The Court rejected both arguments and denied the motion on August 30, 2017. (Doc. 17) Defendant argues that "[b]ecause this motion was denied, it is unreasonable to pass these fees onto Defendant." (Doc. 87 at 7-8)

In reply, Plaintiffs argue that "contrary to FCA's position, the standard is not whether a motion was granted or denied, it is whether this work was reasonable." (Doc. 88 at 8) Plaintiffs assert, "Whether the lawsuit was heard in state or federal court could have serious implications for Plaintiffs, such as the standard regarding a unanimous jury verdict in federal court to achieve a victory for Plaintiffs." (*Id.*) Therefore, Plaintiffs contend "attempting to remand the case was reasonably necessary, despite the outcome of the motion." (*Id.*)

Notably, however, Plaintiffs fail to address the reasonableness of the time expended by each of the attorneys related to the motion for remand. Plaintiffs' counsel reports Alastair Hamblin spent 3.0 hours reviewing the file, drafting the motion to remand and related documents, and Plaintiffs' objection to the declaration of Kris Grueger filed in support of the removal. (Doc. 84-2 at 20) Mr. Hamblin also indicates he spent 0.5 hours to prepare for and attend the hearing on the motion to remand, and "[d]raft results" on the hearing for multiple cases. (*Id.* at 21) Once Defendant filed its opposition, Mr. Hamblin spent 1.3 hours reviewing the documents "in anticipation of drafting [a] Reply," which was never filed. (*Id.* at 21) Finally, Kristina Stephenson-Cheang billed for 0.1 hour for her review of the Court's order denying the motion to remand. (*Id.*)

Significantly, as the billing records acknowledge, Plaintiffs' counsel filed motions to remand in "multiple cases" before this Court. (*See* Doc. 84-2 at 21) Similar arguments were presented to the Court in each motion challenging diversity jurisdiction.[1] The Court is unable to find the time related to drafting the motion, attending the hearing, or reviewing the opposition—particularly where no reply was filed— was reasonably expended by counsel. In addition, it appears the time reported by counsel was excessive, where Mr. Hamblin reports 0.2 hour to prepare a proposed order that less than half a page of text and identical in form to proposed orders for remand in other cases before the Court. Because Plaintiffs fail to establish the time was reasonably expended in this action, the Court will award only 1.5 hours related to the motion work by Mr. Hamblin, and the lodestar calculation below will be reduced by 3.3 hours for Mr. Hamblin. (*See* Doc. 84-2 at 20-21)

ii.     *Internal communications and review*

As noted above, a fee applicant "should make a good-faith effort to exclude from a fee request hours that are … redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434. The Ninth Circuit has "recognized that 'the participation of more than one attorney does not necessarily constitute an unnecessary duplication of effort.'" *McGrath v. County of Nevada*, 67 F.3d 248, 256 (1995) (quoting *Kim v. Fujikawa*, 871 F.2d 1427, 1435 n.9 (9th Cir. 1989)). However, in general, counsel should not bill for internal communications and communicating with each other, as such time is unnecessary. *See, e.g., In re Mullins*, 84 F.3d 459, 467 (D.C. Cir. 1996); *Robinson v. Plourde*, 717 F. Supp. 2d 1092, 1099 (D. Haw. 2010).

This Court previously observed, "many courts have ... reduced fee awards for time spent in 'interoffice conferences' or other internal communications." *Gauchat-Hargis v. Forest River, Inc.*, 2013 WL 4828594 at *3 (E.D. Cal. Sept. 9, 2013) (citing, *e.g., Mogck v. Unum Life Ins. Co. of Am.*, 289 F.Supp.2d 1181, 1194 (S.D. Cal 2003) [reducing selected time entries because attorneys "billed an inordinate amount of time for interoffice conferences"]; *Coles v. City of Oakland*, 2007 WL 39304, at *10 (N.D. Cal. Jan. 4, 2007) ["communication between attorneys may indicate unreasonable

---

[1] For example, the Court notes that a similar motion was filed by counsel two months before in the Celestine case (*Celestine v. FCA*, case number 2:17-cv-00597) and it was denied for the same reasons as here. It is simply not possible— or reasonable— that the motion in this case could have necessitated the time reported given the significantly duplicative arguments presented by counsel in the FCA cases before this Court.

overstaffing such that a reduction in hours is appropriate"]). Notably, as Defendant argues, a review of the billing records from Knight Law Group reveals a significant amount of time spent on the preparation of internal memorandums and summaries for co-counsel.

Alastair Hamblin attended the scheduling conference on May 17, 2017, and then drafted the "results" of the conference, which were reviewed by Steve Mikhov. (Doc. 84-2 at 20) Mr. Mikhov also bills for his review of the "results" of other Court conferences and hearings attended by co-counsel, including the case management conference on February 9, 2017; the motion to remand on August 2, 2017; and the pre-trial conference on June 18, 2019. (*Id.* at 19, 21, 23)

Attorneys also prepared and reviewed memorandums regarding the depositions of Plaintiffs, Stanley Gozzi, Thomas Lepper, and Barbara Luna. (Doc. 84-2 at 22-23) For example, after defending Plaintiffs' depositions and attending the vehicle inspection, Diane Hernandez drafted memorandums regarding the depositions and inspection. (*Id.* at 22) Amy Morse then billed 0.2 for her review of these documents. (*Id.*) Further, summaries of depositions followed memorandums prepared by others. Michael Morris-Nussbaum attended the depositions of Thomas Lepper and Barbara Luna and drafted memorandums regarding the depositions, which were then reviewed by Ms. Morse, who billed 0.2 hour for her review. (*Id.* at 23) Despite the prior memorandum regarding the depositions of Mr. Leeper and Ms. Luna, Kristina Stephenson-Cheang then reviewed the transcripts and drafted her own summaries, for which she reported 4.1 hours of work. (*Id.*)

Because the preparation and review of these documents were clearly internal communications and duplicative in nature, the Court will reduce the lodestar by a total of 5.0 hours. *See Gauchat-Hargis*, 2013 WL 4828594 at *3; *In re Durosette*, 2012 WL 9123382 at *3 (E.D. Cal. Aug. 23, 2012) (finding a reduction of time appropriate in part due to the amount of time reported for "preparing memos to the lead partner on the case"). This amount includes deductions of 0.5 hour for Mr. Mikhov, 0.4 for Ms. Morse, and 4.1 hours for Ms. Stephenson-Cheang.

### iii. Clerical tasks

The Supreme Court determined that "purely clerical or secretarial tasks should not be billed at a paralegal or [lawyer's] rate, regardless of who performs them." *Missouri v. Jenkins*, 491 U.S. 274, 288 n.10 (1989). As a result, courts have eliminated clerical tasks from fee awards. *See, e.g.,*

*Nadarajah v. Holder*, 569 F.3d 906, 921 (9th Cir. 2009); *see also Harris v. L & L Wings, Inc.*, 132 F.3d 978, 985 (4th Cir. 1997) (approving the court's elimination of hours spent on secretarial tasks from the lodestar calculation).

Mr. Mikhov indicates that he spent 0.5 hour on August 28, 2019 to "[r]eview and audit billing" prior to the filing of this motion. (Doc. 84-2 at 24) Due to the clerical nature of the task, the Court will reduce the 0.5 hour from the fee award for Mr. Mikhov.

<em>iv.    Travel</em>

Defendant objects to the time reported by Diane Hernandez, noting that she billed 13.0 hours for attending Plaintiffs' deposition, which were brief and resulted in transcripts totaling 87 pages (Doc. 87 at 8; *see also* Doc. 84-2 at 22) In addition, Defendant objects to the 11.5 hours reported for Ms. Hernandez related to the vehicle inspection. (*Id.*) Ms. Hernandez indicated her reported time had "travel included" for both the deposition and vehicle inspection. (Doc. 84-2 at 22)

Courts have frequently reduced travel time by half to create a reasonable rate. *See, e.g.*, *In re Washington Public Power Supply Sys. Sec. Lit.*, 19 F.3d 1291, 1298-99 (9th Cir. 1994) (finding the district court did not err in reducing attorney travel time by half where the "attorneys generally billed the entire duration of the time spent in transit"); *Watkins v. Fordice*, 7 F.3d 453, 459 (5th Cir. 1993) (affirming a reduction by half of the hourly rate for time billed for travel); *S. Yuba River Citizens League & Friends of the River v. Nat'l Marine Fisheries*, 2012 WL 1038131, at *5 (E.D. Cal. Mar. 27, 2012) (finding the attorney travel time was "subject to a 50% reduction"); *Wishtoyo Found. v. United Water Conservation Dist.*, 2019 U.S. Dist. LEXIS 39927 (C.D. Cal. Mar. 5, 2019). Accordingly, the Court finds the travel time for Ms. Hernandez is subject to a fifty-percent reduction.

Importantly, however, the billing records from counsel do not clearly identify the time expended by Ms. Hernandez for travel due to the block-billing format of her entries, which include time for preparation, travel to and from the depositions and vehicle inspection, and drafting summaries. (*See* Doc. 84-2 at 22) Defendant estimates that Ms. Hernandez spent ten hours on travel for the deposition and eight hours on travel for the vehicle inspection. (Doc. 87 at 8) Plaintiffs offer no clarification of the actual travel time in their reply, arguing only that the travel "time was reasonably necessary as FCA noticed both the depositions and the vehicle inspection." (Doc. 88 at 9)

10

On the other hand, in the Bill of Costs, Ms. Hernandez indicated that she drove 337 miles for the depositions of Plaintiffs and 370 miles for the vehicle inspection. (Doc. 83 at 3-4) In addition, the evidence submitted related to the mileage indicates the travel time to the depositions was estimated between 2 hours and 50 minutes and 4 hours. (*Id.* at 16) The travel time to the vehicle inspection site was estimated to be 3 hours and 51 minutes. (*Id.* at 45) Thus, the Court finds it is reasonable to conclude that the billing from Ms. Hernandez includes, at a minimum, 13.37 hours of travel. Because this amount is subject to a fifty-percent reduction, the lodestar calculation below reflects a deduction of 6.69 hours for Ms. Hernandez.

### v.  *Excessive time and block billing*

The Court has conducted an extensive review of the billing records in this action, due to Plaintiffs' burden to demonstrate the reasonableness of the hours reported. *See Hensley*, 461 U.S. at 424 (1983); *see also Ketchum*, 24 Cal.4th at 1132 (explaining the court has a burden to "carefully review attorney documentation of hours expended" to determine whether the time reported was reasonable). In doing so, the Court observed there are many instances in which the time billed appears excessive for the tasks completed, even where counsel reported the minimum 0.1 hour. For example, Ms. Stephenson-Cheang billed 0.1 hour for her review of the Court's minute order on the motion to remand on July 27, 2017; 0.1 for reviewing the minute order continuing the settlement conference on January 4, 2018; 0.1 for reviewing minute orders granting requests for telephonic appearances in March 2018; and 0.1 hour for reviewing the minute order setting a status conference on December 3, 2018; (Doc. 84-2 at 21-23) Each of these minute orders were only a few sentences long and would take moments to review, not six minutes.

Further, there are many entries in which attorneys from Knight Law used a block billing format, where the reported time "bundles tasks in a block of time." *See Aranda v. Astrue*, 2011 U.S. Dist. LEXIS 63667 at *13 (D. Ore. June 8, 2011). As the Ninth Circuit observed, "block billing makes it more difficult to determine how much time was spent on particular activities." *Welch v. Metro. Life Ins.*, 480 F.3d 942, 948 (9th Cir. 2007). This is particularly demonstrated here, where counsel included preparation, and attendance at various conferences and depositions in one entry. For example, Alastair Hamblin billed 1.2 hours on May 17, 2017, for his time to "[p]repare for and attend [the] Initial

Scheduling Conference (telephonically)" and "[d]raft results." (Doc. 84-2 at 20) However, what preparation was required is unclear, as he previously billed for preparing the Rule 26 Joint Report. In addition, the Court's records indicate the Scheduling Conference began at 8:32 a.m. and ended at 9:02 a.m., during which time the Court discussed not only this action, but also addressed five related matters with the same counsel. Thus, only five minutes of the Scheduling Conference should be attributed to the action now pending before the Court, and it appears the billed time is excessive. However, due to the block billing format, it is unclear how much time Mr. Hamblin is billing for his appearance.

Where, as here, attorneys presented time expended in blocks, the Court may "simply reduce[] the fee to a reasonable amount." *Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115, 1121 (9th Cir. 2000); *see also Welch*, 480 F.3d at 948 ("We do not quarrel with the district court's authority to reduce hours that are billed in block format"). Specifically, the Ninth Circuit determined a district court may "impose a small reduction, no greater than 10 percent—a 'haircut'—based on its exercise of discretion" for block billing. *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008). Given the evidence that reported time entries were excessive and the block billing format used by counsel at Knight Law, the Court exercises its discretion to reduce the lodestar calculations below by 10 percent for each of the attorneys at Knight Law Group. The Court finds the remaining hours are reasonable in light of the tasks completed by Knight Law Group in this action.

b. Work completed by Hackler Daghighian Martino & Novak, P.C.

As noted above, Knight Law Group associated Hackler Daghighian Martino & Novak, P.C. ("HDMN") into action "to prepare the case for trial." (Doc. 84-1 at 11) Defendant objects to the hours billed by HDMN as unreasonable, asserting the firm included duplicative tasks, clerical tasks, and overbilled with quarter-hour increments. (Doc. 87 at 9-11)

i. Duplicative entry

As an initial matter, the Court notes the billing records from HDMN include duplicative entries from Kevin Jacobson related to his receipt and review of Defendant's Rule 68 offer. (*See* Doc. 84-3 at 9) Mr. Jacobson has two identical entries for 0.25 hour related to his receipt and review on July 30, 2019. (*Id.*) Accordingly, the Court will deduct 0.25 hour from the lodestar calculation below for Mr. Jacobson.

### ii. Clerical tasks

Review of the time sheets from HDMN reveals tasks that were purely clerical and should be excluded from the lodestar calculation. *See Missouri v. Jenkins,* 491 U.S. 274, 288 n. 10 (1989). Specifically, Andrea Plata, a paralegal, recorded 2.75 hours for tasks including printing and saving documents, calendaring deadlines, and reviewing the documents and discovery previously received by Knight Law Group to prepare a trial folder. (*See* Doc. 84-3 at 8)

As noted above, courts have discounted billing entries for "clerical tasks," which includes "filing, transcript, and document organization time." *Nadarajah*, 569 F.3d at 921; *Harris*, 132 F.3d at 985; *Jones v. Metro. Life Ins. Co.*, 845 F. Supp. 2d 1016, 1027 (N.D. Cal. 2012) (discounting time for "filing or retrieving electronic court documents or copying"); *L.H. v. Schwarzenegger,* 645 F. Supp. 2d 888, 899 (E.D. Cal. 2009) (finding organizing and updating files appeared clerical, and declining to award fees where the applicant "tendered no evidence that these are tasks that required the skill of a paralegal"). Thus, 2.75 hours expended by Ms. Plata on the clerical—and duplicative— tasks will be deducted from the lodestar.

Defendant also observes that Ms. Plata reported 4.5 hours for preparation of a deposition summary and argues the time should be discounted "[g]iven the vague description." (Doc. 87 at 9) However, the Court is unable to find this work is duplicative or redundant. Accordingly, the Court declines to deduct this time from the lodestar.

### iii. Unsupported and "anticipated" time

Defendant argues the Court should not award the 17.5 hours of anticipated time included in the billing records for Erik Schmitt and Sepehr Daghighian related to reviewing the opposition, drafting the reply brief, and attending the hearing on the motion for fees and costs. (Doc. 87 at 9-10) Plaintiff contends the time should be awarded because "FCA provides no basis in fact or law as to why the fees related to the work performed (or that will be performed), should be reduced." (Doc. 88 at 9)

Significantly, Plaintiff failed to provide any evidence related to the time spent reviewing the opposition and drafting the Reply brief, despite the numerous other exhibits attached to the declarations of Mr. Mikhov in reply. (*See* Doc. 88-2) In addition, the motion was taken under submission without oral arguments on November 29, 2019. The Court declines to speculate as to the actual time spent by

counsel in preparing the reply brief, as it is the fee applicant's burden to present evidence to support a motion. *See Hensley*, 461 U.S. at 424; *Welch*, 480 F.3d at 945-46. Accordingly, the lodestar calculation below reflects a reduction of 7.5 hours for Mr. Schmitt and 10.0 hours for Mr. Daghighian.

*iv.    Quarter-hour billing*

HDMN billed in quarter-hour increments, which Defendant argues warrants a deduction in the fee award because "not every task takes 15 minutes to complete" and "Plaintiffs offer no evidence whatsoever that such billing practices are accepted in the industry as standard." (Doc. 87 at 10) In addition, Defendant observes the practice of billing in quarter-hour increments "has been criticized because it inflates time spent on the matter." (*Id.*)

As Defendant argues, courts have repeatedly criticized quarter-hour billing because it inflates time spent on the matter. *See, e.g., v. Metro Life Ins. Co.,* 480 F.3d 942, 949 (9th Cir. 2007) (affirming a reduction after finding the billing practice inflated the time recorded); *Robinson v. Plourde*, 717 F. Supp. 2d 1092, 1100-01 (D. Haw. 2010) (applying a 20% reduction for billing in quarter-hour increments); *Prudential Ins. Co. v. Am. v. Remington*, 2014 WL 294989 at *4 (E.D. Cal. Jan. 24, 2014) (also applying a 20% reduction where counsel billed in 15 minute-increments); *Ekstrom v. Marquesa at Monarch Beach Homeowners Assoc.*, 2008 WL 4768861 (Cal. App. 4th. Nov. 3, 2008) (finding the trial court did not err in decreasing the fees requested by 40% where the attorneys billed in quarter-hour increments).

In *Welch*, the district court "imposed a 20 percent across-the-board reduction on [the] requested hours" because the law firm "billed in quarter-hour increments." *Id.*, 480 F.3d at 948. The district concluded the "practice of billing by the quarter-hour resulted in a request for excessive hours . . . because counsel billed a minimum of 15 minutes for numerous phone calls and e-mails that likely took a fraction of the time." *Id.* The Ninth Circuit also reviewed the time sheets and noted: "Our own review of the time sheet confirms that it is replete with quarter-hour or half-hour charges for the drafting of letters, telephone calls and intraoffice conferences." *Id.* Therefore, the Court affirmed the reduction for quarter-hour billing. *Id.*

HDMN billed for quarter-hour increments, but the Court's review of the time records does not reveal significant evidence that the billing records were inflated by the billing practice. On the other

14

hand, there are entries for 0.25 and 0.5 hour intraoffice conferences and email correspondence, which were criticized by the Ninth Circuit in *Welch* as evidence the quarter-hour billing practice inflates time. Further, several entries from counsel are in a block-billed format, which makes it difficult for the Court to determine the reasonableness of the time expended on the tasks identified. As a result, the Court will impose a 10 percent deduction for the remaining time reported by the attorneys HDMN. *See Moreno*, 534 F.3d at 1112; *Welch*, 480 F.3d at 948. This results in a compensable total of 0.23 hour for Sepher Daghighian, 14.63 hours for Kevin Jacobson, 11.70 hours for Erik Schmitt, 0.68 hour for Larry Castruita, and 4.05 hours for Andrea Plata. The Court finds this time reasonable for the tasks undertaken by each of the HDMN attorneys and the paralegal assigned to the action.

## 2. Hourly rates

The Supreme Court determined attorney fees are to be calculated with "the prevailing market rates in the relevant community." *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984); *see also PLCM Group, Inc. v. Drexler*, 22 Cal.4th 1084, 1096 (2000) ("[t]he reasonable hourly rate is that prevailing in the community for similar work"). The fee applicant has the burden to establish the rates are reasonable with the community, and meets this burden by "produc[ing] satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum*, 465 U.S. at 896 n.11.

In general, the "relevant community" for purposes of determining the prevailing market rate is the "forum in which the district court sits." *Camacho v. Bridgeport Fin., Inc.,* 523 F.3d 973, 979 (9th Cir. 2008). Thus, when a case is filed in this Court, "[t]he Eastern District of California, Fresno Division, is the appropriate forum to establish the lodestar hourly rate." *See Jadwin v. County of Kern*, 767 F.Supp.2d 1069, 1129 (E.D. Cal. 2011); *see also Gordillo v. Ford Motor Co.*, 2014 WL 2801243 (E.D. Cal. June 19, 2014) (in a diversity action awarding fees under the Song-Beverly Act, the court looked to hourly rates in the Fresno Division, and adjusted the lodestar accordingly).

The court may apply "rates from outside the forum… 'if local counsel was unavailable, either because they are unwilling or unable to perform because they lack the degree of experience, expertise, or specialization required to handle properly the case.'" *Barjon v. Dalton*, 132 F.3d 496 (9th Cir. 1997)

(quoting *Gates v. Deukmejian*, 987 F.2d 1392, 1405 (9th Cir. 1992)). Plaintiffs present no evidence that local counsel was either unwilling or unable to prosecute their claims in this action. Thus, the Court must determine whether the hourly rates requested by counsel are reasonable for the Fresno Division of the Eastern District. *See, e.g., Gordillo*, 2014 WL 2801243 at *5-6.

### a. Rates for non-attorney staff

Plaintiffs' counsel calculated the lodestar using an hourly rate of $75 for Andrea Plata, a paralegal. (*See* Doc. 84-3 at 4, Daghighian Decl. ¶ 7) According to Mr. Daghighian, Ms. Plata has been a paralegal at HDMN "for over two years and is well-versed in litigations support." (*Id.*)

Generally, paralegal rates within the Fresno Division of the Eastern District range between $75 to approximately $150.00. *See Silvester v. Harris*, 2014 WL 7239371 at *4 (E.D. Cal. Dec. 17, 2014) ("[t]he current reasonable hourly rate for paralegal work in the Fresno Division ranges from $75 to $150, depending on experience"); *Trujillo v. Singh*, 2017 WL 1831941 at *3 (E.D. Cal. May 8, 2017) (finding requested hourly rates of $95-115 were reasonable in the Fresno Division). Based upon the information provided by counsel and this Court's prior review of hourly rates for paralegals in the Fresno Division, the Court finds the hourly rate for Ms. Plata is appropriate and no adjustment will be made to the requested rate of $75 per hour.

### b. Rates for counsel

The attorneys at Knight Law Group seek hourly rates ranging from $275 to $550, while attorneys at HDMN seek hourly rates ranging from $225 to $550. (Doc. 84-2 at 7-9, 24; Doc. 84-3 at 2-4) In support of counsel's lodestar calculation and the fee request based upon these hourly rates, Plaintiffs request the Court review:

> (i) the hourly rates set forth of in the declarations filed concurrently herewith (SM Dec., ¶¶ 22-32; SD Dec., ¶¶ 3-7), (ii) a survey of rates charged by other well-known consumer law attorneys (SM Dec., ¶ 35), (iii) nearly a dozen court orders confirming the reasonableness of Plaintiffs' counsels' hourly rates and time billed in other Song-Beverly Act cases (SM Dec., ¶¶ 36-47, Exs. E-P), and (iv) a National Survey further supporting the reasonableness of the hourly rates. (SD Dec., ¶9, Ex. B, at pp. 42-45.)

(Doc. 84-1 at 15) However, much of this evidence does not address the local forum or assist the Court in its analysis. For example, while Mr. Mikhov identifies "the hourly rates of other attorneys in California who work in the area of lemon law and consumer law," he does not identify attorneys

practicing in the Eastern District.  (*See* Doc. 84-2 at 10, ¶ 35)

In addition, Plaintiffs suggest the hourly rates requested are supported by Defendant's refusal "to attach its own bill" to its opposition and the hourly rates it paid experts.  (*See* Doc. 88 at 3)  However, the motion before the Court was filed by *Plaintiffs*, and FCA's hourly rates are not in issue.  The hourly rate paid to *experts* has no bearing upon the propriety of the rates paid to *counsel*.  Moreover, there is no information regarding the location of FCA's attorneys or whether their hourly rates are in line with those awarded in the Fresno Division.  Defendant was under no obligation to produce its billing records in response to the motion, where the burden is upon Plaintiffs demonstrate the requested rates are reasonable within the relevant community.  *See Blum*, 465 U.S. at 896 n.11.

Finally, though Mr. Mikhov identifies cases in which the attorneys were awarded fees from state courts within the Eastern District boundaries[2]—including Fresno County, Merced County, and Tulare County—several of the courts' orders do not identify the hourly rates awarded to counsel.  (*See, e.g.*, Doc. 84-2 at 84-85 [Exh. E], 89-90 [Exh. F], 141 [Exh. O])  Moreover, a majority of the courts offered no analysis regarding whether the hourly rates were reasonable for local counsel.  (*See* Doc. 84-2 at 84-85, 89-90, 94-95, 107-109, 113-115, 119-121, 130-32, 141, and 143-144)  Without such analysis, the Court is unable to determine whether the plaintiffs presented evidence that local counsel was either unwilling to take their cases or unable to do so, such a higher hourly rate was warranted.  Given the lack of such evidence here, the hourly rates will be reduced for purposes of calculating the lodestar.  *See, Gordillo*, 2014 WL 2801243 at *5-6; *Barjon v. Dalton,* 132 F.3d 496, 500-02 (9th Cir. 1997) (affirming the district court's decision to decline an award of out-of-district billing rates where the fee applicants failed "to prove the unavailability of local counsel," and reduced the award to the hourly rates in the relevant community).  Indeed, the requested hourly rates were from Knight Law Group were rejected in *Metzger vs. FCA US LLC* (Fresno County Superior Court Case No. 16CECG02922), which is attached as Exhibit H to the motion, which found the "rates for plaintiff's counsel are higher than Central California's going rates for comparable consumer litigators."  (Doc. 84-

---

[2] Mr. Mikhov also attached documents from cases in Monterey County as Exhibits L and N to his declaration. (Doc. 94-2 at 124-28, 135-38). Notably, Exhibit L is a *proposed* order, and Plaintiffs have not provided a true and correct copy of the signed order.  (*See* Doc. 94-2 at 125-26)  Regardless, Monterey County falls within the borders of the Northern District of California, and the hourly rates awarded do not assist the Court in its analysis of the reasonableness of the rates requested here.

2 at 101)  Mr. Mikhov acknowledges the *Metzger* court only "awarded 85% of the requested lodestar fees."  (Doc. 84-2 at 12, Mikhov Decl. ¶ 39)

Previously, this Court reviewed the billing rates for the Fresno Division and determined "the current reasonable range of attorneys' fees for cases litigated in the Eastern District of California's Fresno Division is between $250 and $400 per hour."  *Roach v. Tate Publ'g & Enter.*, 2017 WL 5070264 at *9 (E.D. Cal. Nov. 3, 2017) (internal quotation marks, citation omitted); *see also Silvester*, 2014 WL 7239371 at *4 ("hourly rates generally accepted in the Fresno Division for competent experienced attorneys [are] between $250 and $380, with the highest rates generally reserved for those attorneys who are regarded as competent and reputable and who possess in excess of 20 years of experience").  With this range, "attorneys with experience of twenty or more years of experience are awarded $350 to 400 per hour."  *Id.*, 2017 WL 5070264 at*9.  For attorneys with "less than ten years of experience . . . the accepted range is between $175 and $300 per hour." *Silvester,* 2014 WL 7239371 at *4 (citing *Willis v. City of Fresno*, 2014 WL 3563310 (E.D. Cal. July 17, 2014); *Gordillo*, 2014 WL 2801243. With these parameters in mind, the hourly rates for counsel must be adjusted to calculate the lodestar.

The Court notes that Diane Hernandez, who seeks the hourly rate of $375, "was admitted to practice in California in 1997."  (Doc. 84-2 at 9, Mikhov Decl. ¶ 31)  In addition, Mr. Mikhov reports that Ms. Hernandez "frequently works… in lemon law cases."  (*Id.*)  Based upon her significant experience, the Court finds the requested hourly rate is appropriate.  *See Roach,* 2017 WL 5070264 at *9; *see also Silvester*, 2014 WL 7239371 at *4.

The hourly rate for Mr. Mikhov and Russell Higgins, who were admitted to the bar in 2003, will be reduced to $300.  *See Trujillo v. Singh,* 2017 WL 1831941 (E.D. Cal. May 8, 2017) (awarding an hourly rate of $300 per hour to counsel with 15 years of experience, finding this amount was appropriate for the Fresno area); *Gordillo*, 2014 WL 2801243 (awarding an hourly rate of $300 to an attorney who had "represented thousands of California consumers with Song–Beverly claims in the last fourteen years").  The hourly rate for Sepehr Daghighian, who began practicing law in late 2005, is adjusted to $275.  The hourly rate for Kristina Stephenson-Cheang, who began practicing in 2008, is

adjusted to $250.  Further, the rates for Alastair Hamblin[3], Amy Morse, Christopher Swanson and Larry Castruita—who began practicing law between 2011 and 2013—are adjusted to $225.  Finally, the hourly rates for attorneys who have practiced law for less than five years—including Deepak Devabose, Erik Schmitt, Kevin Jacobson, and Michael Morris-Nussbaum[4]—are adjusted to $175.

Based upon the prior survey of the attorney fees in the Fresno Division and the Court's own knowledge, these hourly rates are reasonable.  *See Roach,* 2017 WL 5070264 at *9; *Silvester,* 2014 WL 7239371 at *4; *see also Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011) (concluding "the district court did not abuse its discretion either by relying, in part, on its own knowledge and experience" to determine reasonable hourly rates).

### 3.    Lodestar calculation

The lodestar method calculates attorney fees by "by multiplying the number of hours reasonably expended by counsel on the particular matter times a reasonable hourly rate."  *Florida* , 915 F.2d at 545 n. 3 (citing *Hensley*, 461 U.S. at 433); *see also Laffitte v. Robert Half Int'l Inc.*, 1 Cal. 5th 480, 489 (2016).  With the time and rate adjustments set forth above, the lodestar in this action is **$20,766.75**:

| LAW FIRM | LEGAL PROFESSSIONAL | HOURS | RATE | LODESTAR |
|---|---|---|---|---|
| **Knight Law Group ($15,639.00)** | Alastair Hamblin | 7.92 | $225 | $1,782.00 |
| | Amy Morse | 3.06 | $225 | $688.50 |
| | Christopher Swanson | 2.16 | $225 | $486.00 |
| | Deepak Devabose | 4.23 | $175 | $740.25 |
| | Diane Hernandez | 16.30 | $375 | $6,112.50 |
| | Kristina Stephenson-Cheang | 9.36 | $250 | $2,340.00 |
| | Michael Morris-Nussbaum | 8.37 | $175 | $1,464.75 |
| | Russell Higgins | 2.88 | $300 | $864.00 |
| | Steve Mikhov | 3.87 | $300 | $1,161.00 |
| | | | | |
| **Hackler, Daghighian, Martino & Novack ($5,127.75)** | Erik Schmitt | 11.70 | $175 | $2,047.50 |
| | Kevin Jacobson | 14.63 | $175 | $2,560.25 |
| | Larry Castruita | 0.68 | $225 | $153.00 |
| | Sepehr Daghighian | 0.23 | $275 | **$63.25** |

---

[3] Plaintiffs did not provide information regarding when Alastair Hamblin began practicing law, but rather only reported that he "graduated from Southwestern Law School in 2007" and began working at Knight Law Group in 2016. (Doc. 84-2 at 7-8, Mikhov Decl. ¶ 25)  However the Court "may take judicial notice of the State Bar of California's website regarding attorneys' dates of admission to the Bar." *Davis v. Hollins Law*, 25 F.Supp.3d 1292, 1298 n. 5 (2014). Thus, the Court takes judicial notice of the admission date of Alastair Hamblin as February 2012, as represented on the website of the State Bar of California. *See id.*; Fed. R. Evid. 201(b).

[4] For the reasons set forth in Footnote 3, the Court takes judicial notice of the admission date of Michael Morris-Nussbaum as December 1, 2017, as represented on the website of the State Bar of California.

| | Andrea Plata | 4.05 | $75 | $303.75 |
|---|---|---|---|---|
| | | | | |
| **TOTAL** | | | | **$20,766.75** |

### 4. Application of a multiplier

Once a court has calculated the lodestar, "it may increase or decrease that amount by applying a positive or negative 'multiplier' to take into account a variety of other factors, including the quality of the representation, the novelty and complexity of the issues, the results obtained, and the contingent risk presented." *Laffitte,* 1 Cal.5th at 504 (citation omitted); *see also Ketchum v. Moses*, 24 Cal.4th 1122, 1132 (2001) (indicating the court may adjust the fee award considering "the following factors: (1) the novelty and difficulty of the questions involved, (2) the skill displayed in presenting them, (3) the extent to which the nature of the litigation precluded other employment by the attorneys, (4) the contingent nature of the fee award").

Significantly, however, this case did not present novel or difficult questions of law or fact. Indeed, the issues related to the TIPM were addressed in *Velasco, et al. v. Chrysler Group LLC*, Case No. 2:13-cv-08080-DDP-VBK. In addition, the issues presented in this action were not complex. *See Steel v. GMC,* 912 F. Supp. 724, 746 (N.J. Dist. 1995) ("the issues in lemon law litigation are not complex and do not require a significant amount of legal analysis or novel pleading"). As Defendant observes, the facts were not significantly disputed and little discovery was required. It does not appear that significant skill was needed to pursue Plaintiffs' claims. Furthermore, there is no evidence that "the nature of the litigation precluded other employment by the attorneys." To the contrary, Plaintiffs' counsel—13 attorneys in total—expended less than 90 hours of compensable work on this action over the course of three years. Finally, the Court finds the contingent nature of the fee award is outweighed by the other factors, particularly in this action where the disputed facts and issues to be resolved were minimal. Accordingly, the Court finds the lodestar amount of $**20,766.75** is reasonable and declines to award a multiplier.

### B. Costs to be Awarded

Plaintiffs seek costs in the amount of $13,182.90. (Doc. 84 at 2; *see also* Doc. 83) According to Plaintiffs, all costs should be awarded because "[u]nder the Song-Beverly Act, a prevailing buyer shall be allowed to recover as part of the judgment a sum equal to the aggregate amount costs <u>and</u>

expenses." (Doc. 84-1 at 23, emphasis in original) Thus, Plaintiffs suggest that the Court should award costs and expenses under California law rather than federal law.

Significantly, the Ninth Circuit determined an award of costs in the district court is governed by Federal Rule of Civil Procedure 54(d) and not applicable state law, even in diversity cases.[5] *See Champion Produce, Inc. v. Ruby Robinson Co., Inc.*, 342 F.3d 1016, 1022 (9th Cir. 2003) (citing *In re Merrill Lynch Relocation Mgmt., Inc.*, 812 F.2d 1116, 1120 n. 2 (9th Cir. 1987)). This is because "federal courts sitting in diversity apply state substantive law and federal procedural law." *Feldman v. Allstate Ins. Co.*, 322 F.3d 660, 666 (9th Cir. 2003) (citing *Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938)). Thus, federal procedural law governs Plaintiffs' request for an award of costs.

Rule 54 of the Federal Rules of Civil Procedure provides that costs "should be allowed to the prevailing party." Fed. R. Civ. P. 54(d)(1). This "creates a presumption in favor of awarding costs to the prevailing party, but the district court may refuse to award costs within its discretion." *Champion Produce*, 342 F.3d at 1022. "[A] district court need not give affirmative reasons for awarding costs; instead, it need only find that the reasons for denying costs are not sufficiently persuasive to overcome the presumption in favor of an award." *Save Our Valley v. Sound Transit*, 335 F.3d 932, 945 (9th Cir. 2003). For example, costs may be declined in light of "a losing party's limited financial resources" or where there has been "misconduct by the prevailing party." *Champion Produce*, 342 F.3d at 1022.

The Supreme Court explained that 28 U.S.C. § 1920 "defines the term 'costs' as used in Rule 54(d)." *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 441 (1987). Costs that may be taxed under 28 U.S.C. § 1920 include:

> (1) Fees of the clerk and marshal;
> (2) Fees for printed or electronically recorded transcripts necessarily obtained for use
> in the case;
> (3) Fees and disbursements for printing and witnesses;
> (4) Fees for exemplification and the costs of making copies of any materials where the

---

[5] An exception to this rule exists if "a state law provision allows for the awarding of costs as part of a substantive, compensatory damages scheme." *Self v. FCA US LLC*, 2019 WL 1994459, n. 8. (E.D. Cal. May 6, 2019) (citing *Kelly v. Echols*, 2005 WL 2105309, at *16 (E.D. Cal. Aug. 30, 2005); *Clausen v. M/V New Carissa*, 339 F.3d 1049, 1064-65 (9th Cir. 2003). Thus, where a statute expressly defines "damages" as including "costs," state law governs an award of costs because "the measure of damages is a matter of state substantive law." *Andresen v. Int'l Paper Co.*, 2015 WL 3648972, at *3 (C.D. Cal. June 10, 2015). Because the Song-Beverly Act does not make "costs" an element of damages as in *Clausen*, this Court has declined "to depart from the general rule that federal law governs whether costs should be awarded." *Self,* 2019 WL 1994459, n. 8; *see also Robinson v. Kia Motors Am., Inc.,* 2016 WL 4474505, at *1 (E.D. Cal. Aug. 25, 2016) (applying Rule 54(d) to analyze costs under the Song-Beverly Act).

copies are necessarily obtained for use in the case;
(5) Docket fees under section 1923 of this title;
(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

Generally, the court may not award costs under Rule 54(d) that are not authorized by statute or court rule. *Arlington Cent. School Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291, 301 (2006). Thus, "costs almost always amount to less than the successful litigant's total expenses in connection with a lawsuit." *Taniguchi v. Kan Pac. Saipan, Ltd.*, 566 U.S. 560, 573 (2012) (citing 10 Wright & Miller § 2666, at 203).

### 1. Service

Pursuant to Local Rule 292(f)(2), a party may recover "fees for service by a person other than the Marshal under Fed. R. Civ. P. 4 to the extent they do not exceed the amount allowable for the same service by the Marshal." Currently, the United States Marshal charges $8 per mailed item and $65 per hour for personal service. 20 C.F.R. § 0.114(a). Requests for costs that exceed these amounts may be reduced to align with the amount authorized by Section 0.114(a). *See Yeager v. Bowlin,* 2010 WL 716389 at *2 (E.D. Cal. Feb. 26, 2010).

Plaintiffs seek costs for service of the summons to FCA in the amount of $37.95. (Doc. 83 at 3) This fee is within the amount authorized under Section 0.114(a) and will be allowed. However, Plaintiffs also seek $114.35 for service upon Lampe Chrysler, $171.00 for service upon Lampe Chrysler's Tech David Brakeen, $65.50 for service upon Lampe Chrysler's SA Rodney Savazos, and $65.50 for service upon Lampe Chrysler's Tech Ric Duarte. (*Id.*) According to Plaintiffs' invoices, the higher service charges included fees due to copying, area surcharges, and "rush" service. (*Id.* at 9, 11) Plaintiffs offer no explanation as to why "rush" service was necessary, and there is no evidence regarding the amount of time required for this service. Thus, the Court reduces these each of these service fees to $65.00 contemplated by statute, for a total deduction of $157.35.

### 2. Filing service

Plaintiffs seek $179.96 in costs for use of a service that filed their documents. (Doc. 83 at 4) However, courier and messenger services "fall outside of the[] parameters" of Section 1920. *Bonilla v. KDH Backhoe Serv.*, 2007 WL 39307 at *3 (N.D. Cal. Jan. 4, 2007). Accordingly, Plaintiffs' request

for these costs is denied, and the cost award will be reduced by $179.96.

### 3. Mileage

The itemization of costs indicates that Plaintiffs seeks costs for travel by counsel, including mileage to and from several depositions. (Doc. 83 at 3-4) In total, Plaintiff seeks $302.76 in mileage for Diane Hernandez and $14.85 for Michael Morris-Nussbaum. (*See id.*)

Pursuant to Local Rule 292(f)(8), mileage for *witnesses*, not attorneys, may be taxed as costs. Likewise, other courts have determined attorneys are not entitled to mileage under Section 1920. *See, e.g.*, *Syngenta Seeds, Inc. v. Delta Cotton Co-op, Inc.*, 2007 WL 1106116 at *2 (E.D. Ark. Apr. 12, 2007) (declining "to award travel and mileage costs for his attorney as such costs are not found in § 1920"); *Horina v. City of Granite City*, 2007 WL 489212 at *2 (S.D. Ill. Feb. 9, 2007) ("mileage expenses of attorneys are not recoverable costs under 28 U.S.C. § 1920"). As a result, Plaintiffs are not entitled to mileage for their attorneys to travel to the depositions. *See Atain Specialty Ins. Co. v. Sierra Pacific Mgmt. Co.*, 2016 WL 7034887 at *2 (E.D. Cal. Dec. 2, 2016) (finding the plaintiffs were "not entitled to the ... mileage fee for their attorney's travel"). Therefore, Plaintiffs' request for costs will be reduced by $317.61.

### 4. Miscellaneous deposition costs

The requested costs related to depositions also include parking in the amount of $10 for Michael Morris-Nussbaum. (Doc. 83 at 3) Such costs are not permitted under Section 1920. *See Self v. FCA US LLC*, 2019 WL 1994459 at*15 (E.D. Cal. May 6, 2019) (finding costs for "conference rooms, airport parking, gasoline, rental cars, meals, and lodging... are not permitted under section 1920"). Accordingly, the Court will deduct $10.00 from the cost award.

### 5. Deposition transcripts

Section 1920(2) provides that "fees for printed or electronically recorded transcripts necessarily obtained for use in the case" may be taxed as costs. Similarly, Local Rule 292(f)(3) provides that items taxable as costs include "Court reporter fees." Thus, if found to be necessary to the litigation of a case, the costs of transcripts of depositions taken in a case may be taxed as costs under Rule 54 and Section 1920. *See Aflex Corp. v. Underwriters Laboratories*, 914 F.2d 175, 176-78 (9th Cir. 1990) (finding the "taxing of costs for copies of depositions" was proper).

On the other hand, costs incurred related to deposition transcripts that are "merely for the convenience of counsel" are not permitted under Section 1920. *Oyarzo v. Tuolumne Fire Dist.*, 2014 WL 1757217 at *7 (E.D. Cal. Apr. 30, 2014). As a result, costs for expediting transcripts, condensing the transcripts, and litigation support packages are not permitted. *See Daniel v. Ford Motor Co.,* 2018 WL 1960653 at *4 (E.D. Cal. Apr. 26, 2018) ("the court will not allow costs for rough drafts, expedited fees, CD litigation packages, … 'e-transcripts,' 'digital transcripts,' or 'condensed transcripts,' which appear to have been provided for the convenience of the attorneys"); *see also Hesterberg v. United States,* 75 F.Supp.3d 1220, 1225 (N.D. Cal. 2014) (noting it was "well established" in the district that "expedited delivery charges for deposition transcripts are not allowable")

Plaintiff has not made any showing that the copies for Ms. Hernandez, litigation support package, flashdrive, exhibit linking, condensed transcripts, eDisks, and associated handling fees were necessary. Rather, it appears these were for the convenience of counsel, and recovery is not permitted under Section 1920. *See Oyarzo*, 2014 WL 1757217 at *7; *Daniel,* 2018 WL 1960653 at *4. Accordingly, the Court will deduct $379.10 from the requested cost award. (*See* Doc. 54 at 3; Doc. 55-2 at 54)

### 6. Experts

Plaintiff seeks $9,570.60 related to the depositions of expert witnesses Thomas Lepper and Barbara Luna. (Doc. 83 at 4) Defendant objects to these costs, arguing Plaintiffs are entitled to recover only the witness fees under 28 U.S.C. § 1821. (Doc. 86 at 7)

Significantly, the Ninth Circuit determined a court must apply federal law to a request for costs in a diversity action. *See Aceves v. Allstate Ins. Co.,* 68 F.3d 1160 (9th Cir. 1995). The Court in *Aceves* awarded the prevailing party costs, including expert witness fees, under section 998(c) of the California Code of Civil Procedure. *Id.*, 68 F.3d at 1167. The Ninth Circuit found the district court erred in applying California law because "reimbursement of witness fees is an issue of trial procedure" and in a diversity action, "federal law controls the procedure by which the district court oversaw the litigation." *Id.*, citing *Hanna v. Plumer*, 380 U.S. 460, 463 (1965). Accordingly, here, the Court must apply federal law to determine whether Plaintiffs are entitled to recover expert fees as costs.

Under Section 1920, only compensation for "court appointed experts" and witness fees is

permitted. *See* 28 U.S.C. § 1920. Neither of Plaintiffs' witnesses were appointed by the Court. As such, Plaintiffs are not entitled to recover the expert fees under Section 1920. On the other hand, 28 U.S.C. § 1821 provides that "[a] witness shall be paid an attendance fee of $40 per day for each day's attendance," including testimony at a deposition. Thus, a prevailing party may be awarded the witness fee under Section 1821 for an expert who testifies at a deposition. *See Ruff v. County of Kings*, 700 F.Supp.2d 1245, 1247-48 (E.D. Cal. 2010). Consequently, Plaintiff is entitled to $80 in costs for the depositions of Mr. Lepper and Ms. Luna.

7. Mediation costs

Plaintiffs seek $34.48 related to a mediation with Maureen Summers in April 2017, which addressed 29 cases against FCA. (Doc. 83 at 4) However mediation costs are not within the scope of either Section 1920 or Local Rule 292(f). Thus, the cost award will be reduced by $34.48.

8. Total costs to be awarded

With the deductions set forth above, Plaintiffs are entitled to $2,453.80 in costs under federal law, as provided under 28 U.S.C. §§ 1821 and 1920.

**V. Conclusion and Order**

Based upon the foregoing, the Court **ORDERS**:

1. Plaintiffs' motion for fees is **GRANTED** in the modified amount of $**20,766.75**; and

2. Plaintiffs' motion for costs is **GRANTED** in the modified amount of $**2,453.80**.


IT IS SO ORDERED.

Dated: **November 21, 2019** **/s/ Jennifer L. Thurston**
 UNITED STATES MAGISTRATE JUDGE